Mark Z. GREENBERG, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 1:CV–92–642.

United States District Court,
M.D. Pennsylvania.

Dec. 3, 1993.

Robert E. Chernicoff, Harrisburg, PA, for Mark Z. Greenberg.

James J. West, U.S. Atty., Harrisburg, PA, John A. Morano, Jr., U.S. Atty.'s Office, Scranton, PA, Karl J. Fingerhood, U.S. Dept. of Justice, Tax Div., Michael J. Kane, Asst. U.S. Atty., Harrisburg, PA, for U.S., Dept. of Treasury, I.R.S.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court is the government's motion for summary judgment. Briefs have been filed and the motion is ripe for disposition.

### Background

Plaintiff filed the instant action seeking to recover certain funds paid to the Internal Revenue Service ("IRS"). The funds were paid in partial satisfaction of certain assessments made against Plaintiff for allegedly failing to pay employment withholding taxes owing to the government.

Plaintiff is a certified public accountant and a former employee, officer and director of Turning Basin, Inc., a holding company which acquired other operating corporations through leveraged buyouts. In November 1979, after having worked for Turning Basin as an outside consultant, Plaintiff joined the company as Controller. In 1980, Plaintiff became an officer of Turning Basin when he was elected Treasurer and also became a member of the company's Board of Directors. Sometime in 1981, Plaintiff received 40,000 shares of Turning Basin stock.

Plaintiff's responsibilities throughout this period included supervising the other accountants and bookkeepers at the company, preparing financial statements and reports on corporate subsidiaries, consolidating reports and balance sheets for semi-annual reports, assisting outside accounting firms with annual audits, preparing and filing corporate tax returns, and participating in the hiring and firing of employees in his department. Plaintiff was an authorized signatory on all corporate accounts. With Arthur Tuchinsky, Chairman of the company's Board of Directors, Plaintiff had primary responsibility for payroll. Plaintiff wrote most of the payroll checks and checks to other creditors himself.

During 1981 and thereafter, Turning Basin experienced cash-flow problems. During the second quarter of 1981, Turning Basin failed to turn over to the IRS all of the funds due the IRS for employee withholding taxes. Subsequently, the IRS filed a notice of assessment against and demanded payment from Turning Basin and certain of its officers, including Plaintiff.

The assessment against Plaintiff was made pursuant to the 100 percent penalty provision

of the Internal Revenue Code, 26 U.S.C. § 6672. Section 6672 provides for the assessment of a 100 percent penalty against individuals determined to be "responsible for the failure to turn employee withholding taxes over to the government." 26 U.S.C. § 6672.

Plaintiff paid $4024.26 toward the assessment and filed the instant action to obtain a refund. Shortly thereafter, the government filed a counterclaim against Plaintiff for $14,456.52 plus interest which it claims Plaintiff also owes to the government under the penalty provision. The government has moved for summary judgment with respect to Plaintiff's claim and its counterclaim.

## Discussion [1]

### I. Summary Judgment Standards

The Third Circuit Court of Appeals has capsulized the standards for the award of summary judgment under Federal Rule of Civil Procedure 56:

Summary judgment may be entered if "the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 [247–49] 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Equimark Comm. Finance Co. v. C.I.T. Financial Serv. Corp.*, 812 F.2d 141, 144 (3d Cir. 1987). If evidence is "merely colorable" or "not significantly probative" summary judgment may be granted. *Anderson,* [477 U.S. at 249–51] 106 S.Ct. at 2511; *Equimark,* 812 F.2d at 144. Where the record, taken as a whole, could not "lead a rational trier of fact to find for the nonmoving party, summary judgment is proper." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, [586–88] 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

*Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987). Once the moving party has shown that there is an absence of evidence to support the claims of the nonmoving party, the nonmoving party may not simply sit back and rest on the allegations in his complaint, but instead must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (*quotations omitted*).

### II. Liability under the 100 Percent Penalty Provision

Under the Internal Revenue Code, employers are required to withhold from the wages of their employees income and social security taxes and to hold such taxes in trust for the United States. 26 U.S.C. §§ 3102, 3402, 7501. Employers who fail to collect or turn over such funds to the United States are liable for a penalty (the "100 percent penalty") in the amount of the funds that should have been withheld and paid to the United States. 26 U.S.C. § 6672. The Third Circuit recently outlined certain principles applicable to a challenge to the assessment of such a penalty:

Section 6672(a) provides that a person responsible for withholding and paying over taxes who willfully fails to do so is liable for a penalty equal to the total amount of the unpaid taxes. A section 6672 assessment against a responsible person is equivalent to the assessment of a tax. 26 U.S.C. § 6671(a) (West 1989); *see In re Ribs–R–Us, Inc.*, 828 F.2d 199, 200 (3d Cir.1987). Once the IRS assesses a tax, a rebuttable presumption arises that the assessment is correct. *Psaty v. United States,* 442 F.2d 1154, 1160 (3d Cir.1971). Thus, the IRS's introduction of certified copies of the assessment before the district court shift[s] to [the taxpayer] the burden of going forward with evidence to show

---

1. Plaintiff's argument that Defendant's motion should be dismissed as untimely has no merit. While Defendant's motion was filed one day after the deadline specified in this court's February 10, 1993 scheduling order, the date specified in that order, May 31, 1993, was a federal holiday. Accordingly, Defendant's motion is timely under Federal Rule of Civil Procedure 6.

that the assessment against him under section 6672 was incorrect by establishing either (1) that he was not a responsible person within the meaning of the statute, or (2) that he did not willfully fail to pay the amount due to the IRS. *Id.; Quattrone Accountants, Inc. v. IRS,* 895 F.2d 921, 927 (3d Cir.1990).

*Brounstein v. United States,* 979 F.2d 952, 954 (3d Cir.1992).

In this case, there is no dispute that the IRS has made the above assessments and that Turning Basin owed the taxes.[2] (Counterclaim at ¶ 3; Reply at ¶ 3.) The only material dispute relates to whether (1) Plaintiff was a "responsible person" within the meaning of § 6672 and (2) whether Plaintiff "willfully" failed to turn over the taxes due. The government contends that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law; Plaintiff, on the other hand, asserts that issues of material fact exist which preclude the entry of judgment in favor of the government.

### A. "Responsible Persons" Under § 6672

█ Under § 6672, responsibility is "a matter of status, duty, or authority, not knowledge," and requires that a party have significant, though not necessarily exclusive, control over corporate finances before liability can be imposed. *Brounstein,* 979 F.2d at 955. Section 6672 "was designed to cut through the organizational form and impose liability upon those actually responsible for an employer's failure to withhold and pay over the tax." *Godfrey v. United States,* 748 F.2d 1568, 1574 (Fed.Cir.1984) (quoting *Pacific Nat'l Ins. Co. v. United States,* 422 F.2d 26, 31 and n. 12 (9th Cir.), *cert. denied,* 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269 (1970)). Factors relevant to this determination of responsibility include:

(1) contents of corporate bylaws, (2) ability to sign checks on the company's bank account, (3) signature on the employer's federal quarterly and other tax returns, (4) payment of other creditors in lieu of the

United States, (5) identity of officers, directors, and principal stockholders in the firm, (6) identity of individuals in charge of hiring and discharging employees, and (7) identity of individuals in charge of the firm's financial affairs.

*Brounstein,* 979 F.2d at 955 (citing *Datlof v. United States,* 252 F.Supp. 11, 32–33 (E.D.Pa.), *aff'd,* 370 F.2d 655 (3d Cir.1966), *cert. denied,* 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967)).

█ In support of its motion for summary judgment, the government has presented a certified copy of the notice of assessment and evidence of a demand for payment, as well as substantial evidence with respect to the above factors.

Certain evidence is uncontroverted. First, Plaintiff was an authorized signatory and had the legal power to sign checks on all of Turning Basin's corporate checking accounts. (Greenberg Dep.Tr. at 29, 31.) In fact, Plaintiff signed most of the payroll checks issued during his tenure at Turning Basin and signed checks to other creditors, including the United States. (Greenberg Dep.Tr. at 31, 40.) Second, Plaintiff prepared and signed Turning Basin's federal employment tax statements and returns. (Plaintiff's Counter–Statement of Facts at ¶ 24.) Third, during the relevant time period, Plaintiff was an officer and member of Turning Basin's Board of Directors. (*Id.* at ¶¶ 8, 10.) During that same time period, Plaintiff also held 40,000 shares of Turning Basin stock. (*Id.* at ¶ 9.)

Fourth, Plaintiff was aware of the employment tax delinquency as soon as it arose. (*Id.* at ¶ 25.) Subsequently, he wrote checks to pay other creditors, knowing that the tax liabilities to the United States were still owing. (Greenberg Dep.Tr. at 44–45, 48–49.) Fifth, Plaintiff was in charge of Turning Basin's accounting department which included a bookkeeper and another accountant. (Plaintiff's Counter–Statement of Facts at ¶ 7.) Accordingly, he supervised the employee who received and reconciled the checking account

---

**2.** Though Plaintiff disputes the actual date of the assessment, that does not appear to be material

to the issues raised in the instant motions.

statements. (*Id.* at ¶ 16.) Sixth, Plaintiff's duties included those of an office manager. (Greenberg Dep Tr. at 14–15.) As such, he played a role in the hiring and firing of employees, conducting screening interviews and providing input regarding appropriate salary levels. (*Id.*) The above admissions provide substantial evidence of Plaintiff's control and responsibility for Turning Basin's financial and other affairs.

In spite of these undisputed facts, Plaintiff claims that he did not have sufficient control over Turning Basin's affairs to be a "responsible person" under § 6672. Plaintiff bases this claim on the following assertions: (1) Arthur Tuchinsky had the final say over which bills were paid and that Plaintiff would be fired if he did not pay the bills as directed by Tuchinsky; and (2) Tuchinsky promised to pay the federal tax liabilities and Plaintiff believed that they would be paid. Assuming for purposes of the instant motion the facts as stated by Plaintiff, these defenses are unavailing.

First, § 6672 "does not confine liability for the unpaid taxes only to the single officer with the greatest or the closest control or authority over corporate affairs." *Denbo v. United States,* 988 F.2d 1029, 1033 (10th Cir.1993) (citing *Gephart v. United States,* 818 F.2d 469, 476 (6th Cir.1987)); *see also Barnett v. IRS,* 988 F.2d 1449, 1455 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 546, 126 L.Ed.2d 448 (1993) (§ 6672 applies to "any" responsible person, not just the "most responsible" person). Section 6672 imposes liability not only on the officer with the "final say" regarding which bills get paid, but also on those individuals with *"significant* word over which bills or creditors get paid." *Quattrone Accountants, Inc. v. I.R.S.,* 895 F.2d 921, 927 (3d Cir.1990) (emphasis added). One important measure of this control or influence is the power to sign checks. "The authority to sign checks gives an individual the effective authority to pay creditors, which is the primary concern in assessing 'authority' in this context." *Brounstein v. United States,* 1992 WL 10478 (E.D.Pa.), *aff'd,* 979 F.2d 952 (3d Cir.1992) (citing *Howard v. United States,* 711 F.2d 729, 734 (5th Cir.1983)).

In a recent case, the Third Circuit addressed claims very similar to those made by Plaintiff in this case. *Brounstein,* 979 F.2d at 955. In *Brounstein,* the taxpayer claimed that he was a nominal president whose signature constituted a mere "rubber-stamp" of the financial and other decisions made by Heyer, the individual primarily responsible for running the corporation. The court rejected these contentions, finding that Brounstein was a "responsible person" because he was an authorized signatory on all corporate accounts and signed the majority of payroll checks, because he signed the corporation's tax forms and because he paid for certain C.O.D. deliveries without the explicit approval of the managing principal. *Id.* at 955. The court so concluded despite the fact that the managing principal, not Brounstein, generally kept control of the corporate checkbooks, made all hiring and firing decisions and, with the exception of the C.O.D. deliveries, handled all deposits and disbursements of corporate funds. *Id.* With the exception of authority to pay for delivered goods, all of the bases for the finding of responsibility are clearly present in this case.

Plaintiff attempts to distinguish *Brounstein,* arguing that Brounstein was president of the company and "had *complete discretion* in signing checks for the corporation." (Opposition Brief at 23–24.) This statement is inaccurate. Nowhere in *Brounstein* does the court indicate that the taxpayer had complete discretion to sign checks for the corporation. Rather, the court found only that Brounstein had authority to pay for C.O.D. deliveries without consulting with Heyer, the managing principal. However, this does not appear to be a momentous power. First, there is no evidence that Brounstein had the authority to order the goods that were delivered C.O.D. Second, there is no indication that the goods shipped C.O.D. were of substantial value in absolute terms or relative to overall corporate expenditures.

To the extent that Plaintiff's claim regarding Brounstein's power has some validity, it does not help him. Brounstein did have the *legal* authority to write checks on his company's accounts. Yet, Plaintiff in the instant case had the same legal authority, as he was

an authorized signatory on all corporate accounts and had and exercised the power to issue checks under his signature alone.

At bottom, Plaintiff's defense to this motion is akin to a "Nuremberg Defense." *See Brounstein,* 979 F.2d at 955–56 and n. 5. Plaintiff claims that he was paying the bills as instructed by Tuchinsky and that, if he had used his authority to pay the United States instead of other creditors, he would have been fired. In *Brounstein,* the Third Circuit squarely addressed and rejected this defense. "Instructions from a superior not to pay taxes do not ... take a person otherwise responsible under section 6672(a) out of that category." *Id.* at 955 (citing *Howard v. United States,* 711 F.2d 729, 734 (5th Cir. 1983); *Gephart v. United States,* 818 F.2d 469, 474–75 (6th Cir.1987); *Roth v. United States,* 779 F.2d 1567, 1571–72 (11th Cir. 1986)). "The fact that Brounstein would have been fired if he contravened instructions from [the managing principal] and paid the taxes does not make his actions involuntary.... A corporate officer who fails to pay over to the government withheld taxes when there are funds to do so is not entitled to prefer his own interest in continued employment over that of the government, the beneficiary of a trust created by operation of law when taxes are withheld." *Id.* at 956. By paying other creditors instead of the United States, Plaintiff was doing just what the Third Circuit held was impermissible: preferring his own interest to that of the United States.

Nor is it a defense that Plaintiff thought or hoped that Tuchinsky would eventually come up with the money to pay the taxes owed. *Denbo v. United States,* 988 F.2d 1029, 1033–34 (10th Cir.1993) (the assurance of others that the taxes will be taken care of is no defense). Plaintiff knew that the company was obligated to pay the United States before other creditors. (Greenberg Dep.Tr. at 23–24.) In ignoring that obligation, Plaintiff took the risk that he would be held liable for the taxes if Tuchinsky's "overly-optimistic projections" were not realized. That risk has now returned to haunt Plaintiff. *See Smith v. United States,* 894 F.2d 1549, 1554 (11th Cir.1990) (taxpayer liable because he disregarded risks brought to his attention). Accordingly, the court concludes that Plaintiff was a "responsible person" within the meaning of § 6672.

The cases cited by Plaintiff do not persuade the court otherwise. In fact, one case cited by Plaintiff directly contradicts Plaintiff's position and the proposition for which it is cited. *In re Terrell,* 75 B.R. 291 (N.D.Ala. 1987), *rev'g* 65 B.R. 365 (Bankr.N.D.Ala. 1986). While the bankruptcy court in *Terrell* found that the taxpayer was not a "responsible person" because he was under the control of the corporate president, the cited district court opinion explicitly rejected this legal determination and the analysis which underlay that finding. In so doing, the district court concluded that the bankruptcy court had selectively chosen cases to support what it believed to be the equitable result. *Id.* at 297. Instead of following the bankruptcy court's approach, the district court concluded that "[a]lthough we recognize that our holding today may appear harsh to some, we are bound to follow the law." *Id.* at 298 n. 2 (quoting *Howard v. United States,* 711 F.2d 729, 737 (5th Cir.1983)). *See also Carter v. United States,* 717 F.Supp. 188, 191 (S.D.N.Y.1989) ("The statute is harsh, but the danger against which it is directed—that of failing to pay over money withheld from employees until it is too late, because the company has gone broke—is an acute one against which, perhaps, only harsh measures are availing") (quoting *Wright v. United States,* 809 F.2d 425, 428 (7th Cir.1987)). Further, consistent with the Third Circuit's analysis in *Brounstein,* the *Terrell* court concluded that "a person whose status makes him a responsible person cannot avoid his duties, nor avoid the willfulness of his failure to pay taxes, merely because he purports to have followed the direction of one with more power than he had." *Id.* at 295 n. 1 (citing *Howard,* 711 F.2d 729; *Mazo v. United States,* 591 F.2d 1151 (5th Cir.), *cert. denied,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *Roth v. United States,* 779 F.2d 1567 (11th Cir.1986)).

*United States v. Berg,* 78–2 U.S.Tax Cas. (CCH) ¶ 9601, 1978 WL 4524 (S.D.Ohio 1978), is also distinguishable. *Berg* involved

a claim against a bookkeeper who was neither a shareholder nor a director and who had no authority to issue checks upon his own signature. This differs significantly from Plaintiff's situation.

*Cross v. United States,* 87–2 U.S.Tax Cas. (CCH) ¶ 9634, 1987 WL 19505 (E.D.La.1987), is also instructive, but not for the proposition for which Plaintiff cites it. In *Cross,* three individuals, Cross, Arcenaux and Lancon sought refunds of penalties paid under § 6672. The court recognized that the individuals had varying levels of involvement and responsibility in the corporation. *Id.* at *2. One of those individuals, plaintiff Lancon, in reality acted as a bookkeeper. He calculated payroll and other expenses that were due, forwarded the amounts due to Cross and signed payroll checks after receiving a disbursement from Cross for that purpose. Lancon had no equity in the business and had no knowledge that employment taxes were not paid. Thus, in spite of his nominal corporate titles, Lancon was absolved of liability. *Id.* at *7.

However, the *Cross* court rejected the attempts of Cross and Arcenaux "to hide in the shadow of Armel," the other incorporator who apparently had the final say in most corporate matters. "Both abdicated their responsibilities by claiming reliance on Armel, even though Armel demonstrated a propensity to ignore legal liabilities." *Id.* at *6. Arcenaux was found liable in spite of his protestations that Armel and, to a lesser extent, Cross, held all the real power in the corporation and the fact that Arcenaux did not have authority to issue checks from many of the corporate accounts. Accordingly, this case provides little support for Plaintiff's position.

In sum, the court concludes that, as a matter of law, Plaintiff was a "responsible" person within the meaning of § 6672.

## B. "Willful" Under § 6672

■ In its brief in support of its summary judgment motion, the government has accurately summarized the case law relevant to willfulness under § 6672:

The United States Court of Appeals for the Third Circuit has stated that "willful-ness," under section 6672, means a "voluntary, conscious, and intentional decision to prefer other creditors over the Government." *Quattrone,* 895 F.2d at 928. "A responsible person acts willfully when he pays other creditors in preference to the IRS knowing that taxes are due." *Brounstein,* 979 F.2d at 956; *Quattrone,* 895 F.2d at 928; *United States v. Vespe,* 868 F.2d 1328, 1334 (3d Cir.1989). "The individual's bad purpose or evil motive in failing to collect and pay the taxes 'properly play no part in the civil definition of willfulness.'" *Hochstein v. United States,* 900 F.2d 543, 548 (2d Cir.1990) [ ]. "A responsible person also can act willfully if he pays other creditors with reckless disregard for whether taxes have been paid." *Quattrone,* 895 F.2d at 928. In this context, "[r]eckless disregard includes the failure to investigate or correct mismanagement after being notified that withholding taxes have not been paid." *Morgan v. United States,* 937 F.2d 281, 286 (5th Cir.1991) [ ].

"Willfulness," for purposes of section 6672, merely means a voluntary, conscious and intentional act, and any payment to other creditors, including the payment of net wages to the corporation's employees, with knowledge that the employment taxes are due and owing to the Government, constitutes a willful failure to pay taxes. *Datloff v. United States,* [252 F.Supp. at 32–33, aff'd, 370 F.2d 655] (3d Cir.); *Hochstein v. United States,* 900 F.2d at 548 (2d Cir.); *Morgan v. United States,* 937 F.2d at 285–86 (5th Cir.); *Gephart v. United States,* 818 F.2d at 475 (6th Cir.); *Emshwiller v. United States,* 565 F.2d 1042, 1045 (8th Cir.1977); *Davis v. United States,* 961 F.2d 867, 869 (9th Cir.1992) [, *cert. denied,* [—— U.S. ——], 113 S.Ct. 969, 122 L.Ed.2d 124 (1993) ]. Knowledge of the unpaid liability, and the failure to pay the liability when the corporation had the funds to do so, is all that is necessary to establish willfulness as a matter of law. *Gephart,* [818 F.2d] at 475[ ]. It is irrelevant that the funds were disbursed in order to keep the corporation in business. [ ]It is no defense that the corporation was in financial distress and that the funds were spent to keep the corporation in busi-

ness with the expectation that sufficient revenue would later become available to pay the United States.[ ] *Emshwiller v. United States,* 565 F.2d at 1042 (8th Cir. 1977). *Accord, Hochstein,* 900 F.2d at 548–49. Nor is it a defense that he would lose his job if he signed a check to the IRS without the express authority of a superior (no Nuremberg Defense). *Brounstein,* 979 F.2d at 956. In addition, the assurance of others that the taxes will be taken care of is also no defense. *Denbo v. United States,* 988 F.2d 1029, 1033–34 (10th Cir.1993).

(United States Brief in Support at 18–20.)[3]

In this case, Plaintiff admittedly paid other creditors at a time that he knew taxes were due to the United States. (Greenberg Dep. Tr. at 44–45.) Well after he knew that taxes were due the United States, Plaintiff continued to sign payroll checks and checks to other creditors to keep the business afloat. (*Id.* at 44–45, 47–49.) The fact that Tuchinsky told Plaintiff what bills to pay or insisted that the tax bills would be paid is no defense. *Brounstein,* 979 F.2d at 956; *Denbo,* 988 F.2d at 1033–34. Plaintiff could have refused to sign the checks or insisted that Tuchinsky or another authorized person sign the checks. He did not do so. Nor is it a defense that Plaintiff would have been fired if he paid creditors other than those Tuchinsky wanted paid. *Brounstein,* 979 F.2d at 956.

Plaintiff's claims that even if he had defied Tuchinsky and written checks to the United States, there would not have been sufficient funds to cover the checks because Tuchinsky put funds into Turning Basin accounts only on an "as-needed" basis. However, there is no question that Plaintiff wrote payroll checks and checks to other creditors during the period in which taxes were overdue. Funds were deposited to cover these payments. Because Plaintiff knew that taxes were due to the United States and paid these other bills instead of the United States,

Plaintiff's failure to pay taxes due was "willful" within the meaning of § 6672.

Accordingly, the United States is entitled to summary judgment both with respect to Plaintiff's claim and to its counter-claim.[4] An appropriate order will be entered.

### ORDER AND JUDGMENT

In accordance with the accompanying memorandum, IT IS **HEREBY ORDERED THAT:**

(1) The government's motion for summary judgment is **GRANTED:**

1. Judgment with respect to Plaintiff's claim for a refund of taxes paid is entered in favor of the government.

2. Judgment with respect to the United States' counterclaim is entered in favor of the United States and against Plaintiff in the amount of $14,456.52 plus interest.

(2) The clerk of court is directed to close the file.

---

**3.** Throughout the quoted section, the court has altered citations forms, omitted citations to other cases, and corrected the quotation where noted by brackets. The court has also omitted the word "supra" where used in the original to refer to previously cited cases.

**4.** Plaintiff has not disputed the amount of the assessments.