

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-1-2002

# Bailey v. United Airlines

Precedential or Non-Precedential:

Docket 0-2537

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Bailey v. United Airlines" (2002). *2002 Decisions.* Paper 89.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/89

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 1, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-2537

JAMES BAILEY,
        Appellant

v.

UNITED AIRLINES

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 97-cv-05223)
District Judge: Hon. Lowell A. Reed, Jr.

Argued July 11, 2001

Before: SLOVITER, ALITO and GREENBERG
Circuit Judges

(Filed: February 1, 2002)

        Michael S. Haber (Argued)
        New York, NY 10007

        Michael J. Torchia
        Semanoff, Ormsby and Greenberg,
         LLP
        Jenkintown, PA 19046

         Attorneys for Appellant

          Otto W. Immel, Jr. (Argued)
          Alan D. Berkowitz
          Jane W. Voegele
          Dechert, Price & Rhoads
          Philadelphia, PA 19103

           Attorneys for Appellee

          Robert J. Gregory
           Senior Attorney
          Gwendolyn Young Reams
          Philip B. Sklover
          Lorraine C. Davis
           Associate General Counsel
          Equal Employment Opportunity
           Commission
          Washington, DC 20507

           Attorneys for Amicus-Appellant
          Equal Employment Opportunity
          Commission

OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant James Bailey filed suit in the United States District Court for the Eastern District of Pennsylvania against his former employer United Airlines, Inc. ("United"), alleging he was terminated in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. S 621 et seq. (2001). The District Court granted United's motion for summary judgment and Bailey appeals.

I.

FACTS

Bailey worked as a commercial airline pilot for Pan American World Airways ("Pan Am") for most of his career. In 1991, after Pan Am declared bankruptcy, United purchased some of Pan Am's South American routes and

agreed to hire a number of Pan Am's former pilots. Bailey was one of the Pan Am pilots hired by United. Bailey was 59 years old at the time United hired him in October 1992.

Based upon his seniority, Bailey was able to bid for a first officer, or copilot, position. To qualify to fly as a first officer, Bailey was required to pass United's first officer training. He passed the training in November 1992 and began working as a first officer. Bailey turned 60 years old on March 5, 1993, four months after completing his first officer training with United.

Federal Aviation Regulations provide that "[n]o person may serve as a pilot on an airplane . . . if that person has reached his 60th birthday." 14 C.F.R. S 121.383(c) (2001). In compliance with this regulation, United notified Bailey that he was no longer qualified to work as a first officer. However, Bailey was qualified to bid for a position as a second officer, or flight engineer, upon the successful completion of the transition training required by United.

United's second officer training consists of a combination of ground school classroom work and participation in aircraft simulator exercises. After probationary second officer candidates complete this preliminary training, they take an oral and written exam and a simulator "check ride," which is the final test designed to present candidates with various real-life flying conditions. According to United's policy, if a candidate fails a check ride or requires excessive additional training periods, a Board of Review is convened and can render a decision that could lead to "remedial action, up to and including discharge" of the candidate. Supp. App. at 17.

Bailey began the probationary second officer training in April 1993 and received a number of low ratings ("unsatisfactory" or "needs improvement") during the training exercises. A written evaluation by Bailey's trainer, James Grimm, commented that Bailey was not able to perform standard operating procedures. The authenticity of this evaluation has been challenged by Bailey. Grimm's deposition testimony was that he had created and signed only one evaluation form for Bailey, but when confronted with a second version of the evaluation uncovered by

3

Bailey, Grimm conceded that another evaluation existed. The second version of Bailey's evaluation suggested that Bailey performed the standard operating procedures "with uncertainty and slowness," which resulted in his failure to complete certain items, but did not say he was unable to perform standard operating procedures. App. at 115. However, Grimm gave Bailey a rating of "needs improvement" on both versions of the evaluation.

In later evaluations, Bailey continued to have difficulties with ground operations. Training records report that Bailey was slow and appeared "unsure of how to deal with unusual or irregular problems during all phases of ground operations." Supp. App. at 32. However, one training evaluator, W. J. Pierson, commented that Bailey "has worked incredibly hard to master the DC-10, and he'll be a fine second officer for [United]." See Bailey v. United Airlines, Inc., 101 F. Supp. 2d 311, 312-13 (E.D. Pa. 2000). Bailey also received an "above standard" rating in "objectivity/motivation/industry." Id.

On April 30, 1993, Bailey failed his simulator check ride. Bailey was informed by his instructor immediately after the check ride that he did not pass. He was also told that United would probably hold a Board of Review, although Bailey maintains he was initially given assurances that United would provide additional simulator training and another check ride. Bailey claims he returned home to Pennsylvania for the weekend knowing some action would be taken, but confident that he would be given another chance. The Board of Review met on May 4, 1993 to evaluate Bailey's performance. After considering Bailey's record and training, the Board decided to terminate Bailey's employment.

Upon Bailey's return to work after the weekend, a United official told Bailey things "didn't look good" and that the Board was not going to recommend him for further training. Supp. App. at 15. Bailey testified that Eric Clethen, the new pilot supervisor, called him "a day later," approximately May 4, 1993, and told him to report to the chief pilot's office in San Francisco the next day. Supp. App. at 15. The substance of the telephone conversation is the subject of dispute. The parties agree that Bailey

informed Clethen that he could not make a meeting on May 5th, but would be available on May 6, 1993. Bailey arrived in San Francisco on May 6th and met with Captain Daly, the chief pilot, and Clethen. Clethen gave Bailey the option of resigning his employment upon the condition that he sign a release of claims against United or have his employment terminated. Bailey refused to sign the release and he was terminated.

Bailey filed a charge of discrimination with the EEOC on March 2, 1994, claiming that United terminated his employment in violation of the ADEA. The ADEA requires that a charge of discrimination be filed with the Equal Employment Opportunity Commission ("EEOC") prior to the initiation of a lawsuit in federal court so that the EEOC has an opportunity to resolve the dispute. See Bihler v. Singer Co., 710 F.2d 96, 97 (3d Cir. 1983). In a "deferral" state such as Pennsylvania that has a procedure for conciliation by a state agency, the EEOC charge must be filed within 300 days after the alleged unlawful employment practice occurs. 29 U.S.C. S 626(d)(2); Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1413-14 (3d Cir. 1991) (en banc).

Bailey commenced this action on a pro se basis on August 14, 1997 and later filed two amended complaints.1 After Bailey retained counsel, he commenced discovery. On June 4, 1999, United submitted a motion for summary judgment. The Magistrate Judge granted an extension of the discovery deadline and dismissed United's motion for summary judgment without prejudice to re-file at the close of discovery. On September 27, 1999, Bailey filed another motion to extend discovery and a motion to amend the complaint to assert claims dealing with fraud, evidence tampering, and civil RICO. The Magistrate Judge denied both of these motions. United then renewed its motion for summary judgment. After all briefing was complete on June

_____

1. On January 8, 1998, Bailey asked the clerk to enter United's default for failure to appear, plead, or otherwise defend. United claims that its in-house counsel sought and received an extension from Bailey to answer the amended complaint and filed an answer within the agreed upon time. The Magistrate Judge granted United's motion to set aside the default on August 7, 1998 and later reaffirmed that decision on August 13, 1998.

13, 2000, the District Court granted United's renewed motion for summary judgment, finding that Bailey's claim was time-barred. Bailey sought reconsideration, which the District Court denied on July 28, 2000. Bailey timely filed this appeal on August 25, 2000. Bailey seeks reversal of the grant of summary judgment, as well as several other determinations of the Magistrate Judge and the District Court.

II.

DISCUSSION

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, a court must "draw[ ] all reasonable inferences from the underlying facts in the light most favorable to the non-moving party." See Battaglia v. McKendry, 233 F.3d 720, 722 (3d Cir. 2000) (quotations omitted). A district court's grant of summary judgment is subject to plenary review. See Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co., 124 F.3d 508, 515 (3d Cir. 1997).

The threshold inquiry in evaluating the timeliness of Bailey's ADEA claim is to identify the precise unlawful employment practice of which he complains. See Del. State Coll. v. Ricks, 449 U.S. 250, 257 (1980). Here, Bailey claims that United's decision to terminate his employment was motivated by unlawful age discrimination.

It is well established that for purposes of filing a charge claiming unlawful discharge, the limitations period must be measured from the date on which the employee was advised of the decision to terminate his or her employment. See Ricks, 449 U.S. at 258-259, 262 (holding that the limitations period commenced to run when the decision not to offer tenure was made and communicated to plaintiff); Bouker v. CIGNA Corp., 1994 WL 594273, at *2 (E.D. Pa. Oct. 24, 1994) (explaining that the applicable limitations period begins to run "when the employee knew or should have known of the harm inflicted by the adverse

6

employment decision"), aff'd, 70 F.3d 1254 (3d Cir. 1995); Guarnaccia v. John Wanamaker, Inc., 1990 WL 90490, at *3 (E.D. Pa. 1990) (limitations period "must be measured from the date the plaintiff was advised he was to be discharged" as opposed to the date of separation). Thus, for Bailey's charge to have been timely, he must not have known prior to May 6, 1993 (300 days earlier) that United had decided to discontinue his employment.

Bailey argues that the statute of limitations began to run on May 6, 1993, the undisputed day on which he was officially presented by United with the option to resign or be terminated.2 United argues that the limitations period began to run on May 4, 1993, the day United alleges that Clethen called Bailey and told him a Board of Review had been held and that his employment would be terminated. Thus, the question before the District Court on the motion for summary judgment was whether there was a genuine issue of material fact as to the date Bailey was advised that United had decided to terminate his employment. The District Court granted summary judgment to United, holding that there was no genuine issue of material fact with regard to this date, that Bailey knew of his termination prior to May 6, 1993, and that therefore Bailey's claim was untimely.

The Supreme Court has held that the charge-filing period begins to run on a claim of unlawful discrimination when the employer establishes its official position and communicates that position by giving notice to the affected employee. Ricks, 449 U.S. at 258–59, 262. An employer establishes its official position when it decides, unconditionally, to terminate an individual's employment and provides the employee with notice of the unconditional decision to terminate his or her employment. Id.  at 257–58.

_____

2. Bailey alternatively argues that his EEOC filing should be deemed timely because he submitted an EEOC intake questionnaire on February 24, 1994, within the 300-day charge filing period. Bailey did not adequately raise this issue before the District Court and thus it is waived
on appeal. Even were the argument not waived, the intake questionnaire was not adequate to constitute a charge sufficient to toll the limitations period. See Michelson v. Exxon Research and Eng'g Co., 808 F.2d 1005, 1010–11 (3d Cir. 1987).

This court has stated that the charge-filing period begins to run on a claim of wrongful discharge under the ADEA when the employer has reached a "definitive conclusion" to terminate the individual's employment. Colgan v. Fisher Scientific Co., 935 F.2d 1407, 1419 (3d Cir. 1991) (en banc). The charge-filing period begins to run only "when the employee receives unequivocal notice of the adverse employment decision." Grayson v. K Mart Corp. , 79 F.3d 1086, 1100 n.19 (11th Cir. 1996). Therefore, the statute of limitations began to run when Bailey first learned unconditionally that his employment with United had or would come to an end.

It is that date that is the subject of conflicting evidence. Bailey contends that he did not know he would be terminated until May 6th, and alternatively that even assuming he knew prior to May 6th, United's offer to allow him to resign in lieu of termination delayed accrual of the limitations period until his response to that offer. It is undisputed that on May 6, 1993, Bailey traveled to San Francisco and met with the chief pilot, where he was officially presented with the option of resigning upon the condition that he sign a release of claims against United or be terminated.

The central focus of the factual dispute regarding when Bailey was advised that United intended to terminate his employment is Bailey's deposition testimony. App. at 20. At his deposition, Bailey was asked what happened upon returning to Denver after the weekend of May 1-2, 1993, having failed to pass his check ride the previous week. He stated that he was told "[i]t didn't look good" and that "the board was not going to recommend [him] for further training." App. at 20. Bailey continued to state that he "received a call from the chief pilot's office in San Francisco a day later and told [sic] to come to San Francisco to be terminated." App. at 20 (emphasis added). Bailey further testified that in the interim between being told to report to the chief pilot's office in San Francisco and the time he actually went to San Francisco, he called a number of people and asked them to call the chief pilot on his behalf in an effort to reverse the decision. It was Bailey's understanding the local chief pilot was the "final determiner of a position in the company." App. at 29.

8

The evidence before the District Court also included an affidavit by Eric Clethen, a member of Bailey's Board of Review. Clethen's affidavit differs from Bailey's testimony in one material respect. Clethen attests that after the Board met on May 4, 1993 and concluded that Bailey's employment would be terminated, he "called Mr. Bailey, informed him of the Board's decision and asked him to travel to San Francisco on May 5, 1993 where he would be removed from United's payroll and offered the opportunity to resign in lieu of termination." App. at 37a. The District Court relied on these two statements for its holding that there was no genuine issue of material fact regarding the date of termination.

In response to United's motion for summary judgment, Bailey submitted an affidavit dated November 10, 1999, in which he stated the following:

> [N]o sooner had I learned that the board of review had met than I was asked to travel to San Francisco to meet with the chief pilot. I promptly traveled from Denver to San Francisco to meet with the chief pilot. At the time, I did not know what the chief pilot's decision was; nor did I know what the board of review's recommendation had been. I hoped for the best, but . . . I affirmatively prepared for negative repercussions, and I sought out colleagues who knew my reputation, my professionalism, and my range of experience to articulate that to the chief pilot so as to help assure the best possible outcome.

App. at 91–92. Bailey also stated in the affidavit that "when I arrived in San Francisco on May 6, 1993 I was surprised to hear that a decision had already been made, and that I was to be terminated." App. at 92. The District Court found unpersuasive the fact that Bailey attempted to garner advocates prior to traveling to San Francisco to affect the decision, since "requests to reconsider . . . cannot extend the limitations period." Bailey v. United Airlines, Inc., 101 F. Supp. 2d 311, 317 (E.D. Pa. 2000) (quoting Ricks , 449 U.S. at 261 n.15) (alteration in original).

The District Court held that Bailey could not avoid summary judgment by submitting an affidavit that

9

contradicted his deposition testimony without offering a satisfactory explanation for the apparent inconsistency. Bailey, 101 F. Supp. 2d at 317 (citing Hackman v. Valley Fair, 932 F.2d 239, 241 (3d Cir. 1991); Martin v. Merrell Dow Pharms., Inc., 851 F.2d 703, 705–06 (3d Cir. 1988); Blackburn v. United Parcel Serv., Inc., 3 F. Supp. 2d 504, 516 n.10 (D.N.J. 1998), aff'd, 179 F.3d 81 (3d Cir. 1999)).

The inconsistency to which the District Court referred was Bailey's deposition testimony that Clethen called and told him to come to San Francisco "to be terminated." The District Court viewed this testimony as an admission by Bailey that he was informed of United's decision to terminate his employment in the May 4, 1993 phone conversation. However, as Bailey has articulated, that sentence can be interpreted to reflect what Bailey later came to understand as the purpose of his meeting. In his affidavit, dated November 10, 1999, Bailey said that when he arrived in San Francisco on May 6th for his meeting with the chief pilot, he was surprised to hear a decision to terminate his employment had been made. The District Court held that because of this contradiction, the affidavit does not create a genuine issue of fact sufficient to withstand summary judgment.

The Martin court recognized situations where "sworn testimony can quite properly be corrected by a subsequent affidavit." 851 F.2d at 705. In a situation "[w]here the witness was confused at the earlier deposition or for some other reason misspoke, the subsequent correcting or clarifying affidavit may be sufficient to create a material dispute of fact." Id. In his memorandum of law opposing United's motion for summary judgment, Bailey explains that his comment "to be terminated" was "merely referencing, in hindsight, the irony that he had to travel a long distance in order to be fired." Supp. App. at 121–122. Bailey suggests that Clethen did not notify him of the Board's decision to terminate his employment during their phone call. Instead, his statement "to be terminated" simply referred to the irony that he later learned he had traveled from Denver to San Francisco to be fired and that this meaning was obvious at the deposition from the tone and cadence of his voice. Supp. App. at 122.

10

In a second affidavit dated June 27, 2000 submitted with Bailey's Motion for Reconsideration of the District Court's grant of summary judgment to United, Bailey asserted that Clethan did not inform him during the May 4, 1993 phone call that a decision had been made regarding his employment with United. Furthermore, Bailey reiterated that he did not know United intended to terminate his employment until May 6, 1993, and submitted the affidavits of two individuals who accompanied Bailey to the meeting on May 6, who stated that Bailey expressed surprise upon learning of his termination on that day.

In his brief and reply brief on appeal, Bailey does not deny that he uttered the words "to be terminated." Rather, he disputes the meaning of this phrase as it was transcribed in his deposition testimony. Bailey explains that the intended meaning of his remark would have been clear had the court reporter inserted an ellipsis or a hyphen before the words "to be terminated" in order to connote a pause and that this would have alerted the reader of the deposition to the intended meaning of his statement. Bailey attempted to explain the contradiction in his affidavit dated June 27, 2000 by explaining that his words "to be terminated" merely referenced in hindsight the purpose of his trip to San Francisco. But the District Court refused to consider this subsequent affidavit since it contained only evidence that was available prior to summary judgment. A district court may properly refuse to consider evidence presented in a motion for reconsideration when the evidence was available prior to summary judgment. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).

Whether or not these affidavits should have been considered by the District Court, the evidence presented on summary judgment was sufficient to create a genuine issue of material fact. The deposition testimony and affidavit on which the District Court relied do not show conclusively that Bailey received notice that he was going to be terminated prior to his meeting on May 6th with the chief pilot. The language in Bailey's testimony and in Clethen's affidavit does not lead unambiguously to one conclusion.

The Clethen affidavit stated that he "called Mr. Bailey, informed him of the Board's decision and asked him to

11

travel to San Francisco on May 5, 1993 where he would be removed from United's payroll and offered the opportunity to resign in lieu of termination." App. at 37a. The District Court opinion interpreted this statement to state that "[Clethen] told Bailey that a Board of Review had been held and that Bailey would be terminated." Bailey , 101 F. Supp. 2d at 316. The District Court assumed that Clethen was describing what he said to Bailey as distinguished from what ultimately happened in San Francisco. While the assumption reached by the District Court may ultimately be the finding the jury makes, there is contrary evidence, and therefore summary judgment was inappropriate.

Bailey's deposition testimony that it was his understanding that the "local chief pilots are apparently the final determiner of a position in the company," App. at 29, can be interpreted as supporting his belief that no final decision had been made prior to his meeting on May 6th, even if he knew that the Board of Review had made a determination. It is consistent with his requests that co-workers call the chief pilot to provide an evaluation of his performance. In fact, United has not adequately explained why it was necessary for Bailey to travel to San Francisco at all if notice of his termination had already been conveyed over the telephone. When Clethen referred to Bailey's termination in a letter to Bailey dated May 14, 1993, Clethen wrote that the letter "confirms our discussion on May 6, 1993 regarding your failure to meet United Airlines standards . . . . You were released from service from United Airlines . . . effective May 6, 1993." App. at 54 (emphasis added). The letter makes no reference to a conversation prior to May 6, 1993 giving Bailey notice of his termination.

Because we conclude that the evidence does create a genuine issue of material fact and that summary judgment was not appropriate, we need not reach the argument presented by Bailey and articulated in the amicus brief of the EEOC that United's offer to allow Bailey to resign in lieu of termination delayed accrual of the limitations period until the time when Bailey responded to that offer. They argue that commencement of the statute of limitations before the employee has made the decision between resignation and termination would encourage the

12

premature and unnecessary filing of charges by individuals who later decide to voluntarily resign their jobs. Bailey maintains that until he made that decision, nobody, including his superiors at United, knew whether he was going to be terminated. Thus, the statute of limitations could have started running only after Bailey notified United that he would not resign.

Inasmuch as Bailey did not present this argument to the District Court, it has been waived on appeal. Brown v. Phillip Morris Inc., 250 F.3d 789, 799 (3d Cir. 2001). We hold that the statute of limitations began to run as soon as Bailey was informed of the adverse employment decision reached by United and presented with the offer to resign or be terminated. It appears that this date was either May 4, 1993, as Clethen stated in his affidavit, or May 6, 1993, as Bailey claims. This presents a fact issue to be determined, and we must remand for that purpose.

III.

ADDITIONAL ISSUES

Bailey raises a number of additional issues. First, Bailey contends that the District Court improperly determined that United's motion for summary judgment was timely. This court reviews that determination for abuse of discretion. In re Fine Paper Antitrust Litigation, 685 F.2d 810, 817 (3d Cir. 1982) (stating that "matters of docket control . . . are committed to the sound discretion of the district court"). This argument was properly raised before the District Court.

The District Court ordered that all dispositive motions be filed on or before October 11, 1999. It is undisputed that United's motion for summary judgment was submitted on October 12, 1999. United contends that because October 11 was Columbus Day, a federal holiday on which the District Court was closed, its filing the very next business day was timely. The District Court agreed that the motion was timely, consistent with the Federal Rules of Civil Procedure and relevant case law. Bailey v. United Airlines, Inc., 101 F. Supp. 2d 311, 315 n.6 (citing Fed. R. Civ. P. 6;

13

Greenberg v. United States, 873 F. Supp. 912, 914 n.1 (M.D. Pa. 1993), aff'd, 46 F.3d 239 (3d Cir. 1994) (holding that a motion filed one day after a deadline falling on a federal holiday is timely under Fed. R. Civ. P. 6)). Bailey argues that under Rule 6, a federal holiday will extend a deadline to the next day only when a computation of time is involved. Here, the District Court did not order motions to be filed in a specified number of days but instead required briefs to be submitted by October 11, 1999, leaving nothing to compute. Additionally, Bailey maintains that Greenberg ignores the plain meaning of Rule 6 and was never reviewed by this court.

The language of Rule 6 ("[i]n computing any period of time . . .") does suggest it applies only when a computation of time is involved. In fact, the rule would be unnecessary in the context of a specified date. However, Greenberg involved an analogous situation in which the court had ordered that motions be filed on a specific date that fell on a federal holiday and the defendant filed the motion the following day. Greenberg, 873 F. Supp. at 914 n.1. This court did review and affirm the Greenberg decision, although we did not refer to this aspect of the decision. We will follow that decision. Greenberg is consistent with this court's recognition that "broad discretion should be accorded district courts in the management of their calendars." Titus v. Mercedes Benz of North America, 695 F.2d 746, 751 (3d Cir. 1982). Thus, we agree with the District Court that United's motion was timely filed.

Second, Bailey argues that the Magistrate Judge improperly denied his request to amend his complaint to include claims alleging fraud, evidence tampering, and civil RICO. Bailey's request stemmed from his allegation that United fabricated an unfavorable performance evaluation for his personnel file. The Magistrate Judge, having held a hearing, ruled that Bailey had not made out a prima facie case for any of these claims, and denied his request. This court reviews a district court's denial of a request for leave to amend a complaint for abuse of discretion. See Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990). The factors which a trial court may appropriately consider "include undue delay, undue prejudice to the opposing

14

party, and futility of amendment." Averbach v. Rival Mfg. Co., 879 F.2d 1196, 1203 (3d Cir. 1989). United claims that Bailey failed to appeal the Magistrate Judge's denial to the District Court and thus has waived it on appeal. Appellee's Br. at 62-65 (citing 28 U.S.C. S 636(b)(1)(A); United Steelworkers of America, AFL-CIO v. N.J. Zinc Co., Inc., 828 F.2d 1001, 1008 (3d Cir. 1987)). Because Bailey has not pointed to anything in the record to demonstrate that he raised this issue with the District Court and has not shown that there were "extraordinary circumstances," we will not consider this issue. See United Steelworkers, 828 F.2d at 1008 (explaining extraordinary circumstances standard).

Third, Bailey contends that the Magistrate Judge improperly denied his motion for an extension of the discovery deadline, a matter subject to her discretion. Although Bailey included in his statement of the issues to be raised in this court whether the trial court"improperly refused to grant a reasonable extension of the discovery deadline," Appellant's Br. at 3, he failed to argue this issue in his brief. See Kiewit Eastern Co., Inc. v. L & R Constr. Co., Inc., 44 F.3d 1194, 1204 n. 30 (3d Cir. 1995) (noting that under Fed. R. App. P. 28(a)(5), when an issue is presented in the statement of issues raised on appeal, but not in the argument section of the brief "the appellant has abandoned and waived that issue on appeal") (quoting Travitz v. Northeast Dep't ILGWU Health & Welfare Fund, 13 F.3d 704, 711 (3d Cir. 1994)). Therefore, this argument was waived.

Fourth, in his brief, Bailey includes in his statement of the issues "[w]hether the trial court improperly failed to reconsider its decision" to grant United's motion for summary judgment. Appellant's Br. at 1. However, once again Bailey has not addressed this issue in the argument section of his brief. Therefore, there is no basis for finding that the District Court abused its discretion in denying Bailey's motion for reconsideration of its order granting United's motion for summary judgment. See Kiewit , 44 F.3d at 1204 n.30.

Finally, Bailey contends that the Magistrate Judge improperly granted United's motion to set aside the clerk's entry of default and the amended order to set aside the

clerk's entry of default. A decision to set aside an entry of default pursuant to Fed. R. Civ. P. 55(c) "is left primarily to the discretion of the district court." See Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984). However, United claims that Bailey did not seek review by the District Court of this decision and thus, he has waived the issue on appeal. Appellee's Br. at 62 (citing 28 U.S.C. S 636(b)(1)(A); United Steelworkers, 828 F.2d 1001, 1008 (3d Cir. 1987) (stating that "this court has consistently held that it will not, absent extraordinary circumstances, address on appeal issues not originally presented to the district court" and that "to allow parties to challenge magistrates' orders in the first instance on appeal would be to permit them to circumvent the district courts")). Again, Bailey has not pointed to anything in the record to indicate that he raised this issue with the District Court and thus, he has waived the issue on appeal.

Finally, United has made a very strong argument that if this court does not affirm on the grounds of the statute of limitations which was the basis for the District Court's disposition, we should affirm on the ground that Bailey's ADEA claim fails on the merits. The District Court did not reach the issue of summary judgment on the merits. If the statute of limitations was in fact dispositive, then the District Court did not err in failing to consider the merits. However, inasmuch as we have held that there is an issue of fact on the statute of limitations issue, the District Court may on remand turn to the merits issue, which it may find dispositive.

IV.

CONCLUSION

For the reasons set forth above, we will reverse the decision of the District Court granting summary judgment for defendant on the basis of the statute of limitations, and will remand for further proceedings as the District Court deems appropriate.

16

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

17