**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 10-1638 and 10-1870
_____

AMBOY BANCORPORATION,
A New Jersey Corporation

v.

THE BANK ADVISORY GROUP, INC., a Texas Corporation;
JENKENS & GILCHRIST, a Professional Coporation

> Amboy Bancorporation,
>    Appellant in No. 10-1638
> The Bank Advisory Group, Inc.,
>    Appellant in No. 10-1870

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2-02-cv-05410)
District Judge: Hon. Dennis M. Cavanaugh
_____

Argued March 7, 2011

Before:  SCIRICA, AMBRO and VANASKIE, *Circuit Judges*

(Filed  April 25, 2011)
_____

Dennis T. Kearney, Esq. (Argued)
Day Pitney LLP
One Jefferson Road
Parsippany, NJ 07054
    *Counsel for Appellant/Cross-Appellee Amboy Bancorporation*

Mitchell B. Seidman, Esq. (Argued)
Seidman & Pincus, LLC
777 Terrace Ave.
Fifth Floor
Hasbrouck Heights, NJ 07604
    *Counsel for Appellee/Cross-Appellant The Bank Advisory Group, Inc.*

Edward B. Deutsch, Esq. (Argued)
James G. Gardner, Esq.
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mount Kemble Ave.
P.O. Box 2075
Morristown, NJ 07962
    *Counsel for Appellee Jenkens & Gilchrist*

_____

OPINION
_____

VANASKIE, *Circuit Judge*.

At issue on this appeal is whether misrepresentations in a proxy statement

attributable to a law firm (Appellee Jenkens & Gilchrist ("Jenkens")) and a consultant

(Appellee The Bank Advisory Group, Inc. ("BAG")) can be regarded as a proximate

cause of the damages incurred by their client, Appellant Amboy Bancorporation

("Amboy"), as a result of a successful minority shareholder action in which it was

determined that Amboy's minority shareholders received substantially less than fair value

for their shares in a cash-out corporate reorganization. The District Court interpreted the

opinion of the Appellate Division of the New Jersey Superior Court in the minority

shareholder action, *Casey v. Brennan*, 780 A.2d 553 (N.J. Super. Ct. App. Div. 2001), as

holding that the misleading proxy statement was not material to the determination that

minority shareholders were entitled to an award of damages measured by the difference

2

between the price offered for their shares and the actual fair value of those shares. Based upon this interpretation, the District Court concluded that the misleading proxy statement could not have been a proximate cause of the damages Amboy incurred in the minority shareholder action. Contrary to the District Court's interpretation, we find that the existence of misrepresentations in the proxy statement was regarded by the New Jersey state court as a material factor in its liability determination. Accordingly, we will vacate, in part, the District Court's judgment in favor of Amboy and remand for further proceedings.

I.

As we write only for the parties, who are familiar with the facts and procedural history of this case, we relate only the information essential to our analysis.

In 1997, Amboy retained Jenkens and BAG to assist Amboy with its reorganization into a Subchapter S corporation under the Internal Revenue Code. To qualify for Subchapter S status, Amboy had to reduce the number of its shareholders from 420 to no more than 75. *See* 26 U.S.C. § 1361(b)(1)(A) (1996). To that end, Amboy's board of directors, who were also majority shareholders of Amboy, planned a cash-out merger of the minority shareholders. Amboy retained Jenkens to advise it in connection with the merger plan and retained BAG to render an opinion as to the "fair market value" of Amboy's common stock. BAG determined that the "cash fair market value" of Amboy stock was $69.50 per share. BAG's valuation included marketability and minority discounts. Amboy's board of directors voted to pursue a Subchapter S election and, relying on BAG's valuation, approved an offer price of $73 per share.

3

Jenkens prepared the proxy statement issued in connection with the merger. The proxy statement explained that if the merger plan is approved, shareholders who own 15,000 shares of Amboy or who purchase Amboy shares to increase their holdings to 15,000 shares would continue to be shareholders. All other shareholders, except for those who "perfect their dissenters' rights" in accordance with the provisions of the New Jersey Business Corporation Act, would receive $73 per share. (J.A. 418.) The proxy statement further provided that shareholders who receive cash for their shares pursuant to the merger would have no right to dissent from the merger. Additionally, the proxy statement related the board's belief that the $73 per share price "represents a fair value." (J.A. 407.) The proxy statement referenced BAG's fairness opinion, which concluded that the $73 per share price was "fair, from a financial standpoint," to the shareholders. (J.A. 408-10, 493.)

The directors who had initiated the transaction controlled sufficient shares to guarantee the merger's approval, and on November 19, 1997, the merger was approved by the affirmative vote of more than the required two-thirds majority of the votes cast. The merger was completed on December 2, 1997, and the shareholders received their checks on or about January 7, 1998. All shareholders except six accepted the $73 per share consideration.

Three separate actions were subsequently initiated against Amboy and its board of directors in New Jersey state court alleging that the defendants failed to offer the selling shareholders a price that represented the fair value for their shares. The actions were consolidated for trial in the Superior Court of New Jersey, Chancery Division, Union

4

County, under the caption *Casey v. Brennan*. A class was certified consisting of all persons owning less than 15,000 shares of Amboy on November 19, 1997, whose shares were cashed out under the approved merger plan. Although Jenkens initially represented Amboy in the action, because the shareholders' allegations concerning inadequate proxy statement disclosures necessarily implicated Jenkens as the preparer of the proxy statement, it withdrew as counsel to avoid a conflict of interest.

The trial judge rendered an oral opinion in April 1999. He found that the proxy statement "contained . . . misleading statements of material facts and failed to disclose all material facts . . . regarding the true fair value and future prospects of Amboy and the true fair value of Amboy's common stock." (J.A. 603-04.) In finding the proxy statement materially deficient, the trial judge particularly relied on the fact that the proxy statement failed to disclose that the $73 per share offer price was derived first with the application of a 25% minority discount and then a 15% marketability discount. The trial judge, however, refused to impose liability on the individual directors because he found that they relied in good faith on BAG and Jenkens in arriving at the $73 share price.

Concluding that the fair value was $90 per share, the trial court entered judgment in favor of all plaintiffs, with the exception of the shareholders who voted against the plan but then surrendered their shares in exchange for the offer price.[1] According to the trial court, those shareholders who voted against the plan were fully informed as to all

---

[1] Approximately 207,000 shares were held by Amboy shareholders voting against the plan but accepting the $73 offer price.

material facts relating to the merger and, thus, acquiesced in the merger by accepting the merger consideration.

On appeal, the Superior Court of New Jersey, Appellate Division, affirmed the trial court's finding that the proxy statement was materially misleading and inaccurate. The Appellate Division, however, reversed the trial court's ruling that shareholders who voted against the plan but then cashed in their shares were estopped from recovery. Accordingly, all shareholders were found to be entitled to recovery. The Appellate Division also reversed the trial court's determination of fair value and remanded the matter.

Ultimately, following a second remand, the Appellate Division affirmed the trial court's determination that the fair value of Amboy stock was $114 per share. As a result of this finding, Amboy was required to pay approximately $33 million to its minority shareholders.

In 2002, Amboy initiated this action in the Superior Court of New Jersey, Law Division, against Jenkens and BAG asserting claims for professional negligence, breach of fiduciary duty, and breach of contract. Jenkens removed the case to the United States District Court for the District of New Jersey.

As to the professional negligence claim, Amboy in part alleges that Jenkens and BAG failed to ascertain and advise Amboy that "fair value," not "fair market value," was the proper valuation standard in New Jersey. On the premise that it would not and could not have proceeded with the merger at $114 per share, Amboy alleges damages based on the New Jersey judgment requiring it to pay the shareholders the difference between the

6

$73 merger price and the $114 adjudicated fair value price. Amboy also seeks attorney and expert fees incurred in defending the shareholder action, as well the fees incurred in prosecuting this suit.

In 2005, Jenkens moved for summary judgment with respect to Amboy's claim of damages resulting from the New Jersey court's fair value determination. Jenkens argued that Amboy could not establish that Jenkens's alleged negligence was the proximate cause of such damages because Amboy was legally obligated to pay its shareholders fair value for their shares regardless of the accuracy of the proxy statement. The District Court denied Jenkens's motion for summary judgment, concluding that material issues of fact existed as to whether Jenkens breached a duty to Amboy and whether the breach was a substantial factor in Amboy's damages.

In 2007, BAG filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Texas. Amboy filed a motion to dismiss the Chapter 7 case. The Bankruptcy Court denied Amboy's motion, but modified the automatic stay of 11 U.S.C. § 362(a) to permit the District Court to determine whether complete relief could be accorded to Amboy and Jenkens if BAG were either severed or dismissed from the action. Amboy then filed a letter application in the District Court seeking "an order determining that complete relief cannot be accorded as to the remaining parties . . . without BAG remaining a party in this action." (J.A. 746-47.) On September 12, 2007, the District Court granted Amboy's application.

In 2008, Jenkens made a number of motions, including, as relevant here, a renewed motion for partial summary judgment on the issue of damages and a motion for

7

partial summary judgment on the breach of fiduciary duty and breach of contract claims. In an order entered on August 13, 2008, the District Court granted both motions.

On January 23, 2009, following the denial of Amboy's motion for reconsideration of the August 13, 2008 Order, BAG filed a motion for summary judgment. In support, BAG argued in part that the law of the case doctrine precluded review of issues resolved by the District Court in its partial summary judgment rulings in favor of Jenkens. The District Court denied BAG's motion on the ground that the March 5, 2008 Final Pretrial Order listed all pending and contemplated motions, that BAG failed to inform the District Court that it contemplated filing any motions, that the case was scheduled to be tried in the coming month, and that BAG had failed to participate in the action in any meaningful way prior to moving for summary judgment.

On February 9, 2009, the District Court conducted a status conference to address whether any viable claims remained against Jenkens in the wake of the August 13, 2008 Order granting its motions for partial summary judgment. On August 18, 2009, following briefing on the issue, and a second status conference on August 5, 2009, the District Court concluded that "its Order and Opinion of August 13, 2008, granting [Jenkens's] motions for partial summary judgment have disposed of all claims raised by [Amboy] against [Jenkens], and that [Amboy] has no viable claim remaining against [Jenkens]." (J.A. 5.) Accordingly, the District Court entered judgment dismissing all claims against Jenkens with prejudice. On February 24, 2010, the District Court entered a Consent Order that made the August 13, 2008 Order and Opinion equally applicable to BAG and dismissed all of Amboy's claims against BAG.

Amboy appeals from the District Court's August 18, 2009 Order granting judgment in favor of Jenkens, the August 13, 2008 Order granting Jenkens's motions for partial summary judgment, as well as the November 25, 2008 Order denying Amboy's motion for reconsideration of the August 13, 2008 Order. BAG cross-appeals from the September 12, 2007 Order determining that BAG should remain a party to the action, and from the January 30, 2009 Order denying its motion for summary judgment.

II.

The District Court had jurisdiction pursuant to 28 U.S.C § 1332, and we have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's partial summary judgment rulings. *Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 250 (3d Cir. 2005). We will review the District Court's determination that BAG should remain a party to the action for clear error as to the underlying findings of fact and exercise plenary review over the District Court's conclusions of law. *See Huber v. Taylor*, 532 F.3d 237, 247 (3d Cir. 2008). Finally, we will review for abuse of discretion the District Court's decision to deny BAG's motion for summary judgment essentially on the ground that it was untimely. *See In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982); *see also Bailey v. United Airlines*, 279 F.3d 194, 202-03 (3d Cir. 2002).

III.

In granting Jenkens's motion for partial summary judgment with respect to Amboy's damages claim, the District Court determined that Jenkens's role in preparing the proxy statement could not have been a proximate cause of Amboy's damages because the Appellate Division in *Casey v. Brennan*, 780 A.2d 553 (N.J. Super. Ct. App. Div.

9

2001), held that Amboy had an independent duty to compensate all of its shareholders at fair value. Thus, under the District Court's reading of *Casey*, the misleading proxy statement was not a material factor in finding Amboy liable. Because we disagree with the District Court's reading, we will vacate the grant of partial summary judgment.

Under the New Jersey Business Corporation Act, a shareholder of a New Jersey corporation who objects to the offer price has the right to dissent from the plan of merger and, following the plan's approval, to make a written demand for the payment of the "fair value" of his shares. N.J.S.A. 14A:11-1(1)(a) & 14A:11-2(3). Shareholders who receive cash in exchange for their shares, however, have no statutory right to dissent. *Id.* 14A:11-1(1)(a)(i)(B)(x). The New Jersey trial court had concluded that dissenting shareholders who accepted the Amboy offer price were estopped from challenging its fairness. The Appellate Division, however, determined that those shareholders still had the right to claim the fair value of their shares. 780 A.2d at 567-69.

The parties dispute the basis for the Appellate Division's holding. Amboy contends that the Appellate Division held that it was the misleading proxy statement that entitled Amboy shareholders to claim fair value. Jenkens and BAG, on the other hand, contend that the Appellate Division held that all Amboy shareholders were entitled to claim fair value because shareholders are always entitled to fair value, regardless of the completeness and accuracy of a proxy statement's disclosures. The District Court agreed with the interpretation advanced by Jenkens and BAG. Although we acknowledge that

10

certain broad language in *Casey* could be read to support the District Court's conclusion,[2] a careful review of *Casey* and the precedents on which it relied makes clear that the misleading proxy statement was indeed material to the Appellate Division's decision.

Our disagreement with the District Court's reading of a less than pellucid Appellate Division opinion is based upon the following statement:

> In our view, the dissemination of an inaccurate or misleading proxy statement *in conjunction with* a cash-out merger that sets forth an inadequate cash-out price is sufficient to allow non-statutory dissenters to challenge the merger, or claim fair compensation for their shares, unless otherwise precluded by some other statute, doctrine, rule or law.

*Id.* at 568 (emphasis added). "In conjunction with" plainly signifies that the misleading proxy statement must be considered in combination with an inadequate cash-out price. *See* Webster's Third New International Dictionary 480 (1993). Thus, the misleading proxy statement is essentially the key that opens the courthouse door to non-statutory dissenters who seek to recover fair value.

Buttressing this reading of *Casey* is the Appellate Division's treatment of the Delaware Supreme Court's decision in *Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983). In *Weinberger*, the Delaware Supreme Court established that controlling shareholders standing on both sides of a transaction have the burden of proving the transaction's "entire fairness." 457 A.2d at 710. The *Casey* court explained that under

---

[2] Appellees in particular emphasize the following language from *Casey*: "[E]ven those shareholders who do not qualify as statutory dissenters still have the right to claim fair compensation for their shares in the context of a cash-out merger, as an incident of the fiduciary duty of the majority to treat the minority fairly." 780 A.2d at 567.

11

*Weinberger*, even though the ultimate burden of proof is on the majority shareholders to show by a preponderance of the evidence that the transaction is fair, the initial burden of proof is on the "plaintiff attacking the merger to demonstrate some basis for invoking the fairness obligation." 780 A.2d at 568 (quoting *Weinberger*, 457 A.2d at 703) (internal quotation mark omitted). We have previously noted that "[this] rule makes practical sense," as "[a] party challenging a transaction ought not to be able to invoke the remedial powers of the court without making *any* showing that the transaction was unfair." *Landy v. Amsterdam*, 815 F.2d 925, 930 (3d Cir. 1987) (emphasis in original).

Quoting *Weinberger*, the Appellate Division in *Casey* observed that "'[t]he concept of fairness has two basic aspects: fair dealing and fair price,'" and that "[f]air dealing necessarily includes the 'obvious duty of candor.'" *Casey*, 780 A.2d at 568 (quoting *Weinberger*, 457 A.2d at 711). The Appellate Division, again citing *Weinberger*, further observed that "'where corporate action has been approved by an *informed* vote' of the minority shareholders," the plaintiffs shoulder the burden of proving that the transaction was not fair to the minority. *Id.* at 569 (emphasis in original) (quoting *Weinberger*, 457 A.2d at 703).

The Appellate Division affirmed the trial court's finding that the proxy statement was misleading. *Id.* If the accuracy or completeness of the proxy statement were immaterial to the Appellate Division's ultimate determination, there would have been no need for the appellate court to address the trial court's finding on that issue. In our view, it is for this reason that all the shareholders were permitted to claim fair value for their shares. Stated otherwise, but for the misrepresentations in the proxy statement,

12

shareholders who accepted the tender price would not have been entitled to recover. It necessarily follows that the misleading proxy statement could be a proximate cause of the alleged harm.

Because the District Court interpreted *Casey* to hold that all shareholders are always entitled to claim fair value, without regard to whether the directors had breached their fiduciary duty to the minority shareholders in disseminating a misleading proxy statement, the District Court determined that Amboy could not establish that any breach of the professional duty of care on Jenkens's part was a proximate cause of Amboy having to pay the shareholders the difference between the $73 per share offer price and the $114 per share judicially-determined fair value price. As we read *Casey* to have held that Amboy shareholders were entitled to claim the fair value of their shares *because* of the misleading proxy statement, we conclude that if Amboy could establish that Jenkens breached a professional duty of care that resulted in the dissemination of a misleading proxy statement, Amboy could also establish that such a breach was the proximate cause of Amboy's damages.

Significantly, the Appellate Division in *Casey* indicated that, in the absence of the misleading proxy statement, those shareholders who voted in favor of the merger, as well as those who voted against the merger but then accepted the merger consideration, would have been barred from recovery on a theory of estoppel or acquiescence. *See id.* at 573-75. Consequently, even if we read *Casey* to hold that all shareholders have a cause of action to claim fair value, irrespective of a breach of fiduciary duty, we would nonetheless be compelled to vacate the grant of partial summary judgment.

13

The trial judge held that shareholders who collectively owned approximately 207,000 shares and who voted against the merger but then accepted the $73 per share offer price were estopped from recovery. The Appellate Division disagreed. It acknowledged the Delaware Supreme Court's holding in *Bershad v. Curtiss-Wright Corp.*, 535 A.2d 840 (Del. 1987), that "when an informed minority shareholder either votes in favor of the merger, or . . . accepts the benefits of the transaction, he or she cannot thereafter attack its fairness." *Id.* at 848. The court, however, found *Bershad* inapposite because the proxy statement was misleading and inaccurate. It accordingly concluded that the minority shareholders were *not informed* and that "neither *Bershad* nor the doctrine of estoppel compels a conclusion that the shareholders were not entitled to recover." *Casey*, 780 A.2d at 574. It is clear that, in the absence of the misleading proxy statement, the Appellate Division, under *Bershad*, would have affirmed the trial judge's determination that these shareholders were precluded from recovery, and that Amboy would therefore be able to establish damages with respect to the 207,000 shares for which it had to pay fair value.

Furthermore, we think that in the absence of the misleading proxy statement, the *Casey* court, also under *Bershad*, would have considered those minority shareholders who voted in favor of the merger, accounting for approximately 400,000 shares, as also having acquiesced in the merger. Jenkens's argument that *Bershad* has been undermined by subsequent Delaware case law is unpersuasive. Indeed, the Delaware Supreme Court case, *Kahn v. Lynch Communication Systems, Inc.*, 638 A.2d 1110 (Del. 1994), which has been recognized as having "implicitly overruled the holding in *Bershad*," *Gesoff v. IIC*

14

*Indus. Inc.*, 902 A.2d 1130, 1143 n.89 (Del. Ch. 2006), was decided well before the Appellate Division's decision in *Casey*.

We will therefore vacate the orders granting partial summary judgment on the issue of damages and final judgment in favor of Jenkens and remand to the District Court for further proceedings. Furthermore, in light of our holding, we will vacate the denial of Jenkens's in limine motions that were denied as moot in light of the grant of partial summary judgment and vacate that portion of the February 24, 2010 Consent Order dismissing the professional negligence claim against BAG.[3]

IV.

The District Court granted partial summary judgment in favor of Jenkens dismissing Amboy's claims for breach of contract and breach of fiduciary duty on the ground that Amboy failed to allege "a specific contractual or fiduciary duty separate and distinct from the duty of care owed by an attorney to a client under the negligence standard." (J.A. 15.) We agree and will affirm the order granting partial summary judgment on those claims.

Amboy argues that "Jenkens breached an explicit term in its retainer agreement with Amboy." (Appellant's Br. at 52.) According to Amboy, because Jenkens agreed to "prepare the Proxy Statement in connection with the merger" (J.A. 208-09), Jenkens "breached its contract with Amboy by failing to adequately and properly prepare the

---

[3] On remand, the District Court should address Amboy's additional damages claims, which include claims for the fees incurred in connection with the Subchapter S conversion, defending the shareholder litigation, and prosecuting the instant litigation.

15

Proxy Statement" (J.A. 65). As Jenkens obviously prepared the proxy statement, we are unable to understand how the "explicit term" to "prepare the Proxy Statement in connection with the merger" was breached. Thus, contrary to its assertions, Amboy has not alleged the breach of an express contractual promise and, as the District Court recognized, has only recast its professional negligence claim in the guise of a breach of contract claim. Accordingly, the breach of contract claim was properly dismissed. *Cf. Levinson v. D'Alfonso & Stein*, 727 A.2d 87, 89 (N.J. Super. Ct. App. Div. 1999) (finding that plaintiff had alleged a "classic contract claim" against attorneys where retainer agreement between plaintiff and attorneys provided that a settlement in plaintiff's personal injury action would require plaintiff's authorization and where plaintiff alleged that attorneys settled the action without his authorization).

Amboy's breach of fiduciary duty claim was also properly dismissed as redundant to the professional negligence claim. The breach of fiduciary duty count alleged that "Jenkens . . . failed to carry out its obligations because a New Jersey trial court and the appellate court concluded that the Proxy Statement was materially misleading" and that "[d]espite a direct request by BAG for guidance, Jenkens failed to instruct BAG as to the legally required standard of value in New Jersey." (J.A. 66.) We agree with the District Court that these allegations fail to articulate the breach of any duty "separate and distinct" from the duty of care. Moreover, we decline to entertain Amboy's argument, made in opposition to Jenkens's motion for partial summary judgment, that Jenkens breached its fiduciary duty to Amboy by "misrepresent[ing] the extent of its knowledge with respect to Subchapter S conversions generally, and New Jersey law specifically." (Appellant's

16

Br. at 54.) *See Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

We will accordingly affirm the order granting partial summary judgment in favor of Jenkens on the breach of fiduciary duty and breach of contract claims.

V.

BAG argues that the District Court erred in determining that it should remain a party to the action. As discussed above, following BAG's bankruptcy filing, the Bankruptcy Court modified the automatic stay of 11 U.S.C. § 362(a) to permit the District Court to determine whether complete relief could be accorded to Amboy and Jenkens if BAG were either severed or dismissed from the action. Amboy, noting that the Bankruptcy Court's Order tracked the language of Federal Rule of Civil Procedure 19(a), argued that BAG was a "necessary" party under Rule 19(a) on the ground that complete relief could not be accorded to Amboy and Jenkens in BAG's absence. Fed. R. Civ. P. 19(a). Amboy thus sought "an order determining that complete relief cannot be accorded as to the remaining parties . . . without BAG remaining a party in this action." (J.A. 746-47.)

On September 12, 2007, the District Court granted what it referred to as Amboy's "Rule 19 Application," concluding that "BAG should remain a party and the lawsuit should proceed with BAG as a party." (J.A. 783.) To the extent a compulsory joinder analysis may be applied to determine whether a party who is already joined in an action should remain a party to the action, it would seem that Rule 19(a), addressing "persons to

17

be joined if feasible," would logically apply.  Fed. R. Civ. P. 19(a) (2006).  At the time of the District Court's ruling, Rule 19(a)(1), in relevant part, provided:  "A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if . . . in the person's absence complete relief cannot be accorded among those already parties . . . ."[4] *Id.*  Consequently, "[u]nder Rule 19(a)(1), the Court must consider whether – in the absence of an un-joined party – complete relief can be granted to the persons already parties to the lawsuit."  *Huber*, 532 F.3d at 248.

In support of its contention that it is not a "necessary" party, BAG cites *General Refractories Co. v. First State Insurance Co.*, 500 F.3d 306 (3d Cir. 2007), where we held that certain absent insurers who were not named as defendants in an insured's suit seeking coverage were not "necessary" parties under Rule 19(a)(1) where the court, because of the insurers' joint and several liability under Pennsylvania law, could grant complete relief to the insured from any insurer that was a party to the action.  *Id.* at 314. In light of New Jersey law, we are unable to conclude that complete relief would necessarily be accorded to Amboy in BAG's absence.  New Jersey's Comparative Negligence Act imposes joint and several liability only on tortfeasors who are "60% or more responsible for the total damages."  N.J.S.A. 2A:15-5.3(a).  Thus, a tortfeasor who

---

[4] The 2007 amendment to Rule 19 did not substantively change the former Rule 19(a)(1).  That rule, now codified in Rule 19(a)(1)(A), provides:  "A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . in that person's absence, the court cannot accord complete relief among existing parties . . . ."  Fed. R. Civ. P. 19(a)(1)(A). The Advisory Committee's note on the amendment explains that the revisions to the rule were "intended to be stylistic only."  *Id.* advisory committee's note.

18

is found to be "less than 60% responsible for the total damages" is only responsible for the "damages directly attributable" to that tortfeasor. *Id.* 2A:15-5.3(c). We are consequently unable to see how it could be argued that complete relief would necessarily be accorded to Amboy in BAG's absence in light of the possibility that Jenkens could be found to be less than 60% responsible for Amboy's total damages. We will therefore affirm the District Court's order determining that BAG should remain a party to the action on the ground that complete relief may not be accorded to Amboy and Jenkens in BAG's absence.

## VI.

BAG further argues that the District Court abused its discretion in denying its motion for summary judgment. The District Court denied the motion as essentially untimely, finding that the Final Pretrial Order listed all pending and contemplated motions, that BAG failed to inform the District Court that it contemplated filing any motions, that the case was scheduled to be tried in the coming month, and that BAG had failed to participate in the action in any meaningful way prior to moving for summary judgment. "We will not interfere with a trial court's control of its docket except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant." *In re Fine Paper*, 685 F.2d at 817 (citation and internal quotation marks omitted). BAG has not shown how it was substantially prejudiced by the District Court's denial of its motion for summary judgment. We therefore find no abuse of discretion, and will affirm the District Court's order.

## VII.

In sum, we will vacate the portion of the District Court's August 13, 2008 Order granting partial summary judgment in favor of Jenkens with respect to Amboy's claim of damages, and, accordingly, vacate the denial of Jenkens's in limine motions that were denied as moot in light of the grant of partial summary judgment, vacate the District Court's August 18, 2009 judgment in favor of Jenkens, and vacate the February 24, 2010 Consent Order to the extent it dismissed the professional negligence claim as to BAG. We will further affirm the August 13, 2008 Order granting partial summary judgment in favor of Jenkens on the claims for breach of fiduciary duty and breach of contract and affirm the February 24, 2010 Consent Order to the extent it dismissed those claims as to BAG. We will also affirm the District Court's September 12, 2007 Order determining that BAG should remain a party to the action and affirm the District Court's January 30, 2009 Order denying BAG's motion for summary judgment. The case will be remanded for further proceedings on Amboy's professional negligence claims against Jenkens and BAG.