727 A.2d 87 (1999)
320 N.J. Super. 312
Edward LEVINSON, Plaintiff-Appellant,
v.
D'ALFONSO & STEIN, a Professional Corporation, Mario D'Alfonso, individually and Mario D'Alfonso, Esquire, a Professional Corporation, Donald Stein, Esquire, individually, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted February 18, 1999.
Decided April 15, 1999.
Edward Levinson, plaintiff-appellant pro se.
Marshall, Dennehey, Warner, Coleman & Goggin, for defendants-respondents (Paul A. Snyder, Cherry Hill, and Michelle L. Maute, Marlton, on the brief).
Before Judges STERN, LANDAU and WECKER.
The opinion of the court was delivered by LANDAU, J.A.D.
Plaintiff Edward Levinson appeals pro se from a final order of April 17, 1998 granting the motion of defendants D'Alfonso & Stein, a professional corporation, Mario D'Alfonso, Esq. and his professional corporation, and Donald Stein, Esq., for dismissal of Levinson's complaint with prejudice for failure to comply with the Affidavit of Merit statute, N.J.S.A. 2A:53A-26 to 29.
That statute, effective June 29, 1995, requires that an affidavit of merit be filed within sixty days following the date of filing of the answer in "any action for damages ... resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation...." N.J.S.A. 2A:53A-27. In such affidavit, an "appropriate licensed person" must indicate that "... there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable *88 professional or occupational standards...." Ibid.
In Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 708 A.2d 401 (1998), the Supreme Court interpreted the affidavit requirement not to apply where the principal facts giving rise to the cause of action occurred prior to the statute's June 29, 1995 effective date. The Cornblatt Court was considering a client's malpractice counterclaim to her lawyer's Law Division complaint for fees. Although phrased in terms of a breach of contract, the gravamen of the counterclaim was the plaintiff lawyer's alleged failure to carry out his duties and render services in a reasonable manner by negligent delay, failure to settle, forcing a trial and increasing fees by prolonging the period of representation. Id. at 225, 708 A.2d 401. The Court evidently had no difficulty in considering such allegations to be embraced by the Affidavit of Merit statute. Concluding that the legally significant facts giving rise to the counterclaimant's cause of action did not arise after June 29, 1995, the Cornblatt Court reversed the order of dismissal. It also made clear, however, that dismissals under the Affidavit of Merit statute should be with prejudice, absent "extraordinary circumstances." Id. at 242, 708 A.2d 401.
Upon review of the record, we are satisfied that dismissal of the negligence-professional malpractice aspects of Levinson's complaint, for failure to comply with the Affidavit of Merit requirements, should be affirmed, substantially for the reasons set forth in the trial judge's oral opinion of April 17, 1998. We affirm, too, dismissal of the fraud count for several reasons. As the motion judge indicated, this count essentially repeats the allegations of the initial count, merely adding the label "fraud" to those allegations. The Affidavit of Merit statute, and its evident policy objective, cannot be so readily circumvented. Of equal significance, the allegations do not set forth with specificity, nor do they constitute as pleaded, satisfaction of the elements of legal or equitable fraud. See Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 432 A.2d 521 (1981); Albright v. Burns, 206 N.J.Super. 625, 503 A.2d 386 (App.Div.1986).
We note, however, that respondent's brief asserts that Levinson's "... argument, involving the terms of an agreement, sounds more consistent with a contract claim  which he has not alleged  rather than a `negligent act'." In fact, the Levinson complaint makes these assertions, among others, in Count One:
3. On or about October 10, 1992, the Plaintiff entered into a contract with the Defendant, MARIO J. D'ALFONSO, ESQUIRE, a Professional Corporation to provide legal services concerning the handling of a personal injury/automobile negligence claim as against Donald King and Treadway Express involving an accident that occurred on October 8, 1992.
4. Subsequent to the contractual arrangement entered into by the parties to provide professional legal services, a number of actions were taken by Mario D'Alfonso individually, the professional corporation known as Mario D'Alfonso, Esquire, the professional corporation known as D'Alfonso and Stein, and Donald Stein, Esquire, individually which actions were in furtherance of the contract entered into between the parties and further pursuant to the professional duty owed to the Plaintiff.
5. All defendants consulted with the Plaintiff on various occasions during the course of their representation of the Plaintiff and ultimately litigation was instituted on his behalf. During the course of that litigation, a number of discussions occurred between the parties involving potential settlement of the case and at no time did the Plaintiff ever authorize any of the named Defendants to settle the case on his behalf at an agreed sum.
6. At some point in time, the Defendant, DONALD STEIN on behalf of the Plaintiff, EDWARD LEVINSON advised the attorney for Treadway Express and Donald King that the case would be settled in the sum of $42,500.00. This communication was made to the Defendant's attorney, Tracy Burnley, Esquire without any authority from the Plaintiff and in direct contravention of the Plaintiff's specific instructions.
*89 * * *
9. The various Defendants, at all times failed to act in a professional manner towards the Plaintiff, breached their contractual and professional duty owed to the Plaintiff in their capacity as attorneys for the Plaintiff and otherwise acted in a professionally negligent manner which actions have caused the Plaintiff to suffer damages.
The parties' entire retainer agreement is annexed hereto as an Appendix. We are not called upon to consider the validity or propriety of all of its provisions[1]. It suffices to recognize that the agreement specifically makes the attorney's authorization to effect a settlement or compromise subject to the client's approval. The provision mentioned in footnote one even sets forth a substantial, if questionable, remedy to the attorney when, contrary to his advice, the client elects not to settle and an adverse verdict is returned.
We read count one of Levinson's complaint to assert not only a claim of professional negligence of the nature contemplated by the Affidavit of Merit statute, but also a simple breach of the express terms of the retainer agreement. The latter requires no expert evaluation of professional standards applicable in the circumstances.
Simply put, Levinson asserts that defendants agreed in writing that a settlement would require his authorization but proceeded to settle without authority, perhaps even with awareness of his disapproval. Unlike the Cornblatt scenario, or Levinson's own "fraud" count, this is not merely a professional negligence claim dressed in other legal clothing; it is a classic contract claim against an agent, asserting damages alleged to arise because the agent breached his written contract of employment. The distinction has received scholarly recognition. See Restatement (Third) of the Law Governing Lawyers § 29A[2] (Proposed Final Draft No. 1 1996) and § 76A[3] (Tentative Draft No. 8 1997).
Courts should not countenance an attempt to dilute the Affidavit of Merit statute by giving effect to a mere change in nomenclature. Similarly, however, we should not judicially subject a matter of contract, when its breach requires no expert assessment of care, skill or knowledge, to the requirements of those tort claims which do.
We affirm the order under review to the extent it dismisses the allegations of professional *90 negligence and fraud. We reverse the order to the extent it dismissed, as subject to the Affidavit of Merit statute, the allegation of breach of the retainer agreement's approval-of-settlement clause. Remanded for further proceedings.

WECKER, J.A.D., concurring.
I concur in affirming the dismissal of plaintiff's fraud count for the reasons stated by the majority. I also concur in reversing the dismissal of count one of plaintiff's complaint, because I agree that "no expert assessment *91 of care, skill or knowledge" is essential to maintaining the cause of action stated therein. However, my reasons differ from those of the majority.
Plaintiff's first count alleges both negligence and breach of contract arising from the same facts. The majority reverses because it views the contract claim as outside the reach of the affidavit-of-merit statute, whereas I reverse because I find the negligence claim not to be subject to the statute.
My concern is that for this court to affirm the dismissal of "the allegations of professional negligence" stated in count one, but reverse "to the extent [the court] dismissed... the allegation of breach of the retainer agreement's approval-of-settlement clause," would be to "countenance an attempt to dilute the Affidavit of Merit statute by giving effect to a mere change in nomenclature."
In my view, the contingent fee agreement between these parties, by providing that the attorney "authorized to effect a settlement or compromise, subject to client's approval ..." does no more than state a duty owed to every client. It reflects the standard of care applicable to every legal representation, irrespective of a separate written retainer agreement. Every lawyer must have the client's consent before settling a claim, and no lawyer is authorized to settle a client's claim without such approval.[4]Cf. Amatuzzo v. Kozmiuk 305 N.J.Super. 469, 475, 703 A.2d 9 (App.Div.1997) (there is no effective settlement without client authorization).
I concur in the result here precisely because defendant's written undertaking to settle plaintiff's case only upon his approval is so plainly the applicable standard of care that it requires no expert testimony. See, e.g., Sommers v. McKinney, 287 N.J.Super. 1, 10-11, 670 A.2d 99 (App.Div.1996) (attorney's failure to prepare case, or to submit legal argument to support plaintiff's tenure claim, and misrepresentation to her regarding status of case, required no expert); Brizak v. Needle, 239 N.J.Super. 415, 429-31, 571 A.2d 975 (App.Div.), certif. denied, 122 N.J. 164, 584 A.2d 230 (1990) (failure to file medical malpractice complaint before running of statute of limitations required no expert). In my view, the affidavit-of-merit statute cannot apply to those professional negligence claims that can proceed without expert testimony. See Janelli v. Keeper, 317 N.J.Super. 309, 313, 721 A.2d 1036 (Law Div.1998). It must apply only to claims that could not withstand summary judgment absent an expert's report.
This plaintiff, as I see it, needs no expert to maintain a professional negligence action against the defendant for entering into an unauthorized settlement on his behalf. A jury can readily understand the claimed breach of duty, and needs no expert testimony. As the Supreme Court has held in the context of a medical malpractice case, "where the evidence suggests to people of ordinarily intelligence what the standard of care is, or what the deviation from that standard is, or both, juries have been allowed to determine that standard or deviation regardless of the absence of expert testimony." Klimko v. Rose, 84 N.J. 496, 503, 422 A.2d 418 (1980). If plaintiff needs no expert to withstand a summary judgment motion, or a motion to dismiss at trial under R. 4:37-2(b) or R. 4:40-1, it would be unreasonable to require an affidavit of merit as a condition of proceeding with the malpractice action.
I have considered the intent of the legislature in enacting the affidavit-of-merit statute, N.J.S.A. 2A:53A-26, et seq. and I see no evidence in the legislative history to suggest an intent to overrule the common law with respect to the need for expert testimony. The intent of the legislature plainly was to set up a screening device, a means to eliminate baseless suits against professionals at an early stage, thereby limiting the administrative burden of non-meritorious lawsuits on the courts, and at the same time minimizing the burden of defending such suits. See, e.g., In re Petition of Hall, 147 N.J. 379, 391, 688 A.2d 81 (1997).
On the facts before us, to hold that plaintiff's negligence claim is governed by the affidavit-of-merit statute, but his contract claim is not, creates an easy detour around *92 the statute. This would encourage every malpractice plaintiff to include a separate count sounding in contract as a protective device, for even where there is no express contract between lawyer and client, i.e., no written retainer agreement, there is always an implied contract. Undertaking legal representation implicitly includes the lawyer's promise to act in accordance with professional standards.
There is another concern raised by the tort/contract issue. The rules of court require a written retainer agreement in some, but not all areas of practice. See R. 1:21-7. By grounding our decision in the tort/contract dichotomy, we place those lawyers who practice in areas regulated by that rule in a different position than other lawyers vis a vis the affidavit-of-merit requirement. In effect, we eliminate the protection of that requirement for a particular group of lawyers. Moreover, we also risk penalizing (or discouraging) lawyers who voluntarily choose to spell out in more detail, in their retainer agreements, precisely the services they expect to perform and the professional standards they will adhere to. No reasonable lawyer (or other professional) would risk including a promise to represent the client "in accordance with professional standards," or "with courtesy," or any other description of a professional standard of care, lest by doing so the lawyer creates a separate contract cause of action for a dissatisfied client.
I have no disagreement with the concept that a lawyer is bound by contract law as well as negligence law, and that a specific contractual undertaking, not required by the otherwise applicable standard of care, is enforceable by the client. However, the mere restatement of a professional duty in the language of contract should not create a separate cause of action in contract, with the attendant legal consequence of avoiding the affidavit-of-merit requirement.
I also disagree with the suggestion by the majority that Cornblatt supports its rationale. If there is an inference with respect to the tort versus contract issue to be drawn from Cornblatt, it is that the Court was not disposed to hold the affidavit-of-merit statute inapplicable to a complaint alleging breach of contract where the same facts support a professional negligence cause of action.
In Cornblatt, the client's case against the attorney was raised by counterclaim to a complaint seeking to reduce a fee arbitration award to judgment. Barow's counterclaim alleged
that Cornblatt breached his contract with her by failing to carry out his duties and render services in a reasonable manner. Specifically, Barow claimed that Cornblatt negligently delayed the case, did not settle the matter, thereby forcing a trial, and charged an excessive fee by prolonging his representation.
[Id. at 225, 708 A.2d 401.]
When Cornblatt moved to dismiss Barow's counterclaim for failure to comply with the affidavit-of-merit statute, Barow "cross-moved for an extension of the expert affidavit filing period.... Alternatively, defendant claimed the statute did not apply to her case because her claim was for breach of contract rather than for damages resulting from personal injury." Id. at 226, 708 A.2d 401. The Supreme Court described the history on appeal:
The Appellate Division affirmed the trial court, holding that the statute encompassed legal malpractice claims against attorneys, the certification in place of an affidavit did not satisfy the statute, the contents of the certification were deficient, and the dismissal with prejudice was appropriate. 303 N.J.Super. 81, 696 A.2d 65 (1997). In dicta, the court also concluded that the statute applies to all actions filed on or after the effective date of the statute regardless of when the underlying facts giving rise to the claims occurred. Id. at 92, 696 A.2d 65.
[Id. at 227, 708 A.2d 401.]
Barow apparently did not contend in the Appellate Division that the breach-of-contract aspect of her counterclaim excused compliance with the affidavit-of-merit statute, and this court did not address the issue.
The Supreme Court reversed, holding that the affidavit-of-merit statute applies, "In sum, the meaning of the Affidavit of Merit Bill calls for its application only to those *93 cases the underlying legally-significant facts of which happen, arise, or take place on or after the effective date of the statute," id. at 236, 708 A.2d 401; that a certification can satisfy the statute under certain circumstances, id. at 240, 708 A.2d 401; that the qualifications of the affiant need not be included in the affidavit itself, id. at 242, 708 A.2d 401; and that the dismissal should normally be with prejudice. Id. at 247, 708 A.2d 401. Before the Supreme Court, Barow apparently did not pursue the contention that her claim was one for breach of contract and that the affidavit-of-merit statute therefore did not apply.
The Court normally does not address issues not raised by the parties, unless the issue is one of public concern and the record is complete on that issue. Id. at 230, 708 A.2d 401. In Cornblatt, the Court chose to address the question whether the statute applied to every case filed after its effective date, or only to those "which happen, arise, or take place on or after the effective date of the statute," id. at 236, 708 A.2d 401, even though the parties did not raise that issue.[5]
Because the Court clearly found it a matter of public importance that the statute's applicability be more clearly defined, it may be significant that the Court did not choose to address the contract/tort issue in deciding Cornblatt. Indeed, Justice Handler refers to the issues before the Court in the context of "malpractice actions" or "malpractice cases," 153 N.J. at 229, 708 A.2d 401, and "malpractice plaintiffs or defendants," id. at 230, 708 A.2d 401. The opinion also defines the occurrence of Barow's "cause of action" as "the underlying facts constituting the alleged malpractice...." Id. at 236, 708 A.2d 401. Thus I see no support in Cornblatt for holding the statute inapplicable to a professional negligence claim that is restated in the language of contract.
Because this case is to be remanded for trial, I suggest that the nomenclature of the cause of action is irrelevant here, because the issue for the jury is entirely factual: whether or not defendant had plaintiff's approval to settle plaintiff's claim as he did. As a matter of law, if defendant acted without plaintiff's approval, he is liable for damages. The jury need only be instructed to answer that question, without a general charge on negligence or breach of contract.
NOTES
[1] One provision purports to entitle the lawyer to the amount of contingent fee that otherwise would have been earned, if the client does not approve a recommended settlement and the case is lost or concluded for an amount less than the recommended settlement. See Cohen v. Radio-Electronics Officers Union, Dist. 3, NMEBA, 146 N.J. 140, 156, 679 A.2d 1188 (1996)(discussing reasonable fee provisions in retainer agreements.)
[2] § 29A. Client-Lawyer Agreements

(1) An agreement between a lawyer and client concerning the client-lawyer relationship, including an agreement modifying an existing agreement, may be enforced by either party if the agreement meets other applicable requirements, except that:
(a) If the agreement or modification is made after a reasonable time after the lawyer has begun to represent the client in the matter (see § 50(1)), the client may avoid it unless the lawyer shows that the agreement and the circumstances of its formation were fair and reasonable to the client; and
(b) if the agreement is made after the lawyer has finished providing services, the client may avoid it if the client was not informed of facts needed to evaluate the appropriateness of the lawyer's compensation or other benefits conferred on the lawyer by the agreement.
(2) A tribunal should construe an agreement between client and lawyer as a reasonable person in the circumstances of the client would have construed it.
[3] § 76A. Civil Liability to Client Other Than for Malpractice

(1) A lawyer is subject to liability to a client for injury caused by breach of contract in the circumstances and to the extent provided by contract law.
(2) A lawyer is subject to liability to a client for injury caused by intentional breach of the fiduciary duties set forth in § 28(3) in the circumstances and to the extent provided by law governing intentional breach of fiduciary duties.
(3) A client is entitled to restitutionary, injunctive, or declaratory remedies against a lawyer in the circumstances and to the extent provided by generally applicable law governing such remedies.
[4] Of course, the client's authorization, or approval, may be conveyed in advance of the actual settlement, and may cover a range of potential terms or sums.
[5] The New Jersey State Bar Association, the Association of Trial Lawyers of AmericaNew Jersey and the Trial Attorneys of New Jersey were permitted to file amicus briefs on that issue.