**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2452-16T4

TRENK, DIPASQUALE, DELLA
FERA & SODONO, PC,

      Plaintiff-Respondent,

v.

INDUSTRIAL URBAN CORP.,
ANTHONY FRISINA, LORI
FRISINA, 35 SEVILLE DRIVE, LLC,
INDUSTRIAL CONCRETE
CONSTRUCTION OF N.J., INC.,
and ARROW POWER BOATS,

      Defendants-Appellants.

_____

      Argued September 12, 2018 – Decided  November 19, 2018

      Before Judges Yannotti, Gilson, and Natali.

      On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-1657-15.

      William Goldberg argued the cause for appellants.

      Henry M. Karwowski argued the cause for pro se respondent.

McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorney for respondent as to the counterclaim only (William F. O'Connor, Jr., of counsel and on the brief).

PER CURIAM

Defendants Industrial Urban Corporation (Industrial Urban), Anthony Frisina, Lori Frisina, 35 Seville Drive, LLC (Seville), Industrial Concrete Construction of NJ, Inc. (Industrial Concrete), and Arrow Power Boats (Arrow) appeal from a January 4, 2017 Law Division order awarding legal fees and interest to plaintiff law firm Trenk, DiPasquale, Della Fera & Sodono, P.C. (Trenk). Defendants also challenge the court's dismissal of their counterclaim for breach of contract.

After a thorough review of the record, we affirm the court's order granting Trenk summary judgment on its claim for unpaid legal fees and dismissing defendants' counterclaim. However, we reverse the order to the extent it allowed Trenk attorney's fees for prosecuting the collection action and awarding it 18% interest on the outstanding invoices and remand for further proceedings for the trial court to determine a "fair and reasonable" interest rate.

2

I.

Defendants retained Trenk to represent them in four lawsuits filed by Valley National Bank (Valley) to recover over $2 million related to their default on various revolving lines of credit ("Valley National litigation").[1] The Valley National litigation also included claims against Industrial Concrete, Seville, and Anthony and Lori Frisina for breaches of commercial notes and personal guarantees. In addition, Valley sought to foreclose on Industrial Concrete's and Seville's real and personal property and requested damages from Industrial Urban, Industrial Concrete and Arrow for alleged fraudulent transfers.

The retainer agreement provided that Trenk would jointly represent all co-defendants and each defendant waived "any conflict associated with that representation." The retainer informed defendants of Trenk's then-current monthly billing rates and required each defendant "to review the invoices" and contact Trenk within thirty days of receipt if any defendant "object[ed] to any

---

[1] Although the retainer agreement describes the engagement to include "a workout of the general litigation matter captioned Valley National Bank v. Industrial Concrete Construction of NJ, Inc., 35 Seville Drive, [LLC], Anthony Frisina, Lori A. Frisina, Industrial Urban Corp., Arrow Power Boats, LLC and John Does 1-10," defendants admitted in their answer that Trenk's retention included three additional matters filed by Valley against defendants.

invoice or portion thereof . . . ." Under the retainer agreement any "failure to timely object to any invoice [or] any individual time entry . . . [was] . . . deemed an acknowledgment of the reasonableness and acceptance of the legal services provided . . . ." If any invoice was more than thirty days overdue, Trenk "reserve[d] the right to assess interest at the rate of 1.5 percent per month on the unpaid balance." Finally, defendants agreed that if Trenk was forced to institute an action to collect its unpaid fees, Trenk was "entitled to recover reasonable legal fees and expenses incurred in [that] action."

Dissatisfied with the progress of Trenk's negotiations with Valley to compromise their debt and settle the litigation, defendants informed Trenk that they wanted to consider filing for reorganization under Chapter 11 of the United States Bankruptcy Code, an option Trenk allegedly advised was available to them at the inception of the engagement. Ultimately, defendants conferred with different counsel and resolved the Valley National litigation without Trenk's assistance.

At the conclusion of the litigation, defendants owed Trenk nearly $100,000 in outstanding legal fees and costs. Despite Trenk's attempts to resolve the dispute through fee arbitration, the outstanding invoices remained unpaid.

As a result, on March 10, 2015, Trenk filed a complaint seeking to recover its unpaid fees and costs. Defendants filed an answer and a counterclaim alleging legal malpractice and gross negligence.

In their counterclaim, defendants claimed that they relied "upon [Trenk's] representations regarding [its] expertise in [b]ankruptcy law, and [Trenk's] specific representations regarding the course of action that [p]laintiff chose to pursue . . . ." Those representations included Trenk's advice after a review of Lori and Anthony Frisina's finances, that it would attempt to settle favorably the Valley National litigation by threatening reorganization under Chapter 11 of the United States Bankruptcy Code and if "negotiations with Valley . . . did not succeed, [Trenk] would, in fact, file such a petition . . . ." According to defendants, they suffered damages as a result of Trenk's failure "to exercise the skill, prudence, and diligence exercised by other specialists of ordinary skill and capacity specializing in the same field . . . [and] committed professional malpractice . . . ."

To support their counterclaim, defendants filed an Affidavit of Merit (AOM) prepared by Andrew M. Epstein, Esq., (Epstein) pursuant to N.J.S.A. 2A:53A-27. Believing Epstein's AOM was deficient as he admittedly did not practice in the field of bankruptcy law, Trenk requested a conference in

accordance with Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144 (2003). Although the conference was not transcribed, the record establishes that the court agreed with Trenk, and directed defendants to submit a revised AOM from an attorney experienced in bankruptcy law.

Rather than submitting a new, compliant AOM, defendants instead continued to maintain that Epstein's affidavit complied with the AOM statute. Accordingly, Trenk filed a motion to dismiss defendants' counterclaim pursuant to Rule 4:6-2(e), which the court granted in a February 19, 2016 order and accompanying written opinion.[2] The court explained that because defendants alleged Trenk deviated from the standard of care applicable to bankruptcy attorneys, the AOM must be provided by someone with a "thorough familiarity of Chapters 7, 11, and 13 of the [Bankruptcy] Code, something that it is conceded . . . Mr. Epstein lacks."

The court also granted defendants' motion to amend their complaint to include a count for breach of contract and an affirmative defense of excessive

---

[2] Defendants' notice of appeal did not list the February 19, 2016 order. Thus, any challenge to that order is not before us. See R. 2:5-1(f)(3)(A); Campagna ex rel. Greco v. Am. Cyanamid Co., 337 N.J. Super. 530, 550 (App. Div. 2001) (refusing to consider an order not listed in the notice of appeal).

fees. Trenk subsequently moved to dismiss defendants' amended counterclaim and for summary judgment with respect to its breach of contract claim.

After hearing oral arguments, the court dismissed defendants' amended counterclaim and granted Trenk's motion for summary judgment. With respect to the amended counterclaim, the court explained:

> Here, even assuming the contract included a promise to institute bankruptcy proceedings, which I find it didn't, defendants stumble when proving that [Trenk breached] any obligation owed to them. To prove that [Trenk] failed to perform its obligations under the contract for the same reasons stated in this [c]ourt's February 19th, 2016 opinion, defendants must prove a deviation from the applicable professional standard of care applicable to practitioners in the field of bankruptcy.
>
> And I . . . remember very clearly oral argument on the prior motion that . . . [defendants' counsel] candidly told me he was unable to secure an affidavit of merit from a bankruptcy attorney because there was no clear indication they would even qualify for Chapter 11 protection. So, for that reason, without an expert to say . . . that [Trenk] did not pursue vigorously any options that were available to [defendants] because the [Frisinas] were leaning towards wanting to do a Chapter 11 or that they were becoming frustrated because things were not moving along very quickly, you would have to have an expert to opine that they did not do what similar practitioners would have done under the circumstances.
>
> An [AOM], therefore, is required and an expert report because . . . defendants' amended claim relies on the

same underlying factual allegations as defendants' dismissed malpractice claim. Defendants cannot simply retitle their malpractice claim a breach of contract claim to circumvent the requirement for an [AOM] . . . .

Trenk sought final judgment in the amount of $196,607.39, which was comprised of $94,041.15 in unpaid legal fees, $41,495.44 in interest on the unpaid legal fees, and $61,070.80 for the fees incurred in Trenk's collection efforts. Defendants filed an objection on October 14, 2016, claiming that legal fees were not "incurred" by Trenk in its pro se collection action and an 18% interest rate for unpaid legal fees was unconscionable. Three days later, defendants filed a supplemental letter claiming that, as against Industrial Urban, entry of a judgment for legal fees and interest would be "a mockery of the Rules of Professional Conduct" because Trenk performed "no legal services" on Industrial Urban's behalf.

After considering the submissions of the parties, on January 4, 2017, the court entered judgment against defendants in the amount of $184,136.39. The court reduced Trenk's request by approximately $12,000 and noted in the order that it made the deduction because it was unclear from certain entries in counsel's certification if Trenk was operating as the plaintiff in its collection efforts or as the defendant in the counterclaim.

## II.

Defendants raise nine points on appeal. We address defendants' arguments in the following manner and order. In Section III, we discuss defendants' claims that an AOM was unnecessary to prosecute the amended counterclaim and that, to the extent an AOM was required, the Epstein affidavit satisfied the statute. In Section IV, we address defendants' argument that the court improperly granted Trenk summary judgment as genuine and material factual questions existed regarding the reasonableness of Trenk's fees and the scope of its representation of Industrial Urban. We assess defendants' position that an interest rate of 18% per year is unreasonable and void as against public policy in Section V. In Section VI, we address defendants' point that Trenk is not entitled to legal fees incurred in connection with its collection efforts. We discuss defendants' contention that certain provisions of the retainer agreement are unenforceable as against public policy in Section VII. Finally, in Section VIII, we resolve defendants' claims that the retainer agreement is contrary to the doctrine of good faith and fair dealing, and contrary to the Rules of Professional Conduct (RPC).

A-2452-16T4

We reject defendants' argument that an AOM was not required to prosecute their amended counterclaim. We also disagree with defendants' claim that the Epstein affidavit complied with the AOM statute.

We review de novo a motion judge's order dismissing a complaint under Rule 4:6-2(e), applying the same standard as the motion judge. See Stop & Shop Supermarket Co. v. Cty. of Bergen, 450 N.J. Super. 286, 290 (App. Div. 2017). That standard requires us to examine the challenged pleadings to determine "whether a cause of action is 'suggested' by the facts." Teamsters Local 97 v. State, 434 N.J. Super. 393, 412 (App. Div. 2014) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)).

The AOM statute provides:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall . . . provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices
>
> . . . .
>
> [T]he person executing the affidavit shall . . . have particular expertise in the general area or specialty

involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years.

[N.J.S.A. 2A:53A-27.]

Failure to comply with the AOM statute constitutes a failure to state "a cause of action." N.J.S.A. 2A:53A-29. In determining whether the AOM statute applies, "[i]t is not the label placed on the action that is pivotal but the nature of the legal inquiry" and "when presented with a tort or contract claim asserted against" a specified professional, "rather than focusing on whether the claim is denominated as tort or contract, . . . courts should determine if the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession." Couri v. Gardner, 173 N.J. 328, 340 (2002).

"If such proof is required, an affidavit of merit shall be mandatory for that claim, unless either the statutory, N.J.S.A. 2A:53A–28, or common knowledge exceptions apply." Id. at 341. Although the statute refers to "the plaintiff," a counterclaimant is considered to be a plaintiff for purposes of the AOM statute. Charles A. Manganaro Consulting Eng'rs, Inc. v. Carneys Point Twp. Sewerage Auth., 344 N.J. Super. 343, 348 (App. Div. 2001); see also Levinson v. D'Alfonso & Stein, 320 N.J. Super. 312, 318 (App. Div. 1999)

11

("Courts should not countenance an attempt to dilute the Affidavit of Merit statute by giving effect to a mere change in nomenclature.").

As the trial court correctly concluded, "the allegations in the counterclaim do not allege that [Trenk] simply failed to fulfill a general duty that applies to all attorneys" but rather "explicitly states that [Trenk] breached the standard of care applicable to practitioners in the field of bankruptcy." Further, we note that the retainer agreement makes no mention that Trenk would file a bankruptcy petition. Thus, we agree with the trial court that the failure to file for bankruptcy was not a clear breach of a contractual provision. Rather, defendant's counterclaim required an expert assessment of bankruptcy law to establish whether, and if so when, Trenk could have, and should have, filed for protection under the Bankruptcy Code.

Defendants' reliance on Couri and Levinson is misplaced. In Couri, plaintiff retained defendant, a psychiatrist, to serve as an expert witness in his matrimonial action. 173 N.J. at 330. The parties did not have a written retainer agreement. Id. at 331. The expert distributed a copy of his report to plaintiff's wife without first obtaining plaintiff's consent or showing him the report. Id. at 330-32. The Supreme Court held that the AOM statute did not apply to plaintiff's claim because proof of "a deviation from prevailing

professional standards of practice . . . [was] not essential to the establishment of plaintiff's right to recover based on breach of contract." Id. at 342. Rather, the court characterized it as a contract dispute where defendant "acted improperly as an expert witness by disseminating the report to others without the knowledge or consent of plaintiff." Ibid.

Similarly, in Levinson, the plaintiff hired the defendant law firms and attorneys pursuant to a retainer agreement that "authorized [the defendants] to effect a settlement or compromise" as to plaintiff's personal injury claims, "subject to [the plaintiff's] approval . . . ." Levinson, 320 N.J. Super. at 319. When the defendants settled the claims without first obtaining the plaintiff's consent, the plaintiff filed suit alleging breach of contract. Id. at 315, 317. We held that the plaintiff's claim was a "classic contract claim against an agent," which fell outside the purview of the AOM statute. Id. at 317-18.

Unlike in Couri and Levinson, defendants' breach of contract claim was not based on a clear breach of the terms or conditions of a retainer agreement, but was based on proof of a deviation from the professional standard of care of an attorney in the field of bankruptcy. Indeed, by incorporating the factual allegations asserted in their dismissed malpractice and gross negligence counterclaims, defendants alleged Trenk's breach of

13

contract was caused by its failure "to exercise the skill, prudence and diligence exercised by other specialists of ordinary skill and capacity specializing in the" field of bankruptcy law.

Having determined that an AOM was required, we next consider whether the Epstein affidavit satisfied the AOM statute. The trial court framed the issue as "whether the AOM affiant must practice in the same specialty as the defendant," which the court determined "must be decided on a case-by-case basis."

The trial court's interpretation of the AOM statute is supported by its plain language. The AOM statute requires the affiant to be "an appropriate licensed person" who has "particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years." N.J.S.A. 2A:53A-27. It was undisputed that Epstein had no such experience.

We conclude that Epstein's lack of expertise in bankruptcy law rendered him an ineligible affiant. We acknowledge circumstances where professionals who practice in different fields have overlapping expertise in a particular practice area sufficient to satisfy the AOM statute's requirements. See, e.g.,

14                                                                 A-2452-16T4

Meehan v. Antonellis, 226 N.J. 216, 238-39 (2016) (permitting a dentist's affidavit to support allegations that an orthodontist negligently treated the plaintiff's sleep apnea because "treatment of sleep apnea is not exclusive to a single dental specialty or subspecialty" and the dentist had "particular expertise in the diagnosis and treatment of sleep apnea"). However, when a complaint alleges a professional failed to conform to a standard of care applicable only to professionals with expertise in a particular practice area, the AOM statute is clear that the affiant must have that particular expertise. Because the amended counterclaim in this case bases its breach of contract allegations upon standards involving bankruptcy law, an area in which Epstein conceded he lacked experience, the Epstein AOM failed to satisfy the requirements of N.J.S.A. 2A:53A-27.

IV.

We reject defendants' arguments that genuine and material factual questions existed in the summary judgment record as to the reasonableness of Trenk's fees. We also disagree that material factual issues existed as to the terms and scope of Trenk's representation of Industrial Urban.

In ruling on a summary judgment motion, a trial court must "consider whether the competent evidential materials presented, when viewed in the light

15

most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). An appellate court reviews a grant of summary judgment de novo, using the same standard as the trial court. Turner v. Wong, 363 N.J. Super. 186, 198-99 (App. Div. 2003). Thus, we must determine whether a genuine issue of material fact is present and, if not, evaluate whether the trial court's ruling on the law was correct. See Prudential Prop. & Cas. Ins. Co. v. Boylan, 307 N.J. Super. 162, 167-69 (App. Div. 1998).

"[A] non-moving party cannot defeat a motion for summary judgment merely by pointing to any fact in dispute." Brill, 142 N.J. at 529. "[A] court should deny a summary judgment motion only where the party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" Ibid. (quoting R. 4:46-2). "[I]f the opposing party" shows disputes concerning "only facts which are immaterial . . . he will not be heard to complain if the court grants summary judgment . . . ." Ibid. (quoting Judson v. Peoples Bank & Tr. Co., 17 N.J. 67, 75 (1954)).

16

With respect to the reasonableness of Trenk's fees, we agree with the trial court that "defendants […] failed to bring forth any competent evidence tending to show that the fees were unreasonable." As the trial court explained:

> The hourly fees listed in the retainer agreement on their face are not [un]reasonable and defendants have not produced any competent evidence to raise a genuine issue of fact tending to show otherwise. In that regard, . . . defendants could have but did not retain[] the services of a bankruptcy attorney to review the bills and opine whether the charges were in line with the fees charged by similar practitioners for similar services.
>
> Anthony [Frisina]'s self-serving and sweeping certification that he thought the bills were high, fails to establish that the bills were unreasonable. So without more, . . . defendants cannot survive summary judgment.

Courts have the inherent power to review the reasonableness and propriety of an attorney's fee, even in the presence of an agreement between the attorney and client, and to adjust the fee in any matter before the court. Rosenberg v. Rosenberg, 286 N.J. Super. 58, 69 (App. Div. 1995). An attorney's bill for services must be reasonable both as to the hourly rate and as to the services performed. Gruhin & Gruhin, P.A. v. Brown, 338 N.J. Super. 276, 280 (App. Div. 2001).

17

The agreement between attorney and client "ordinarily controls unless it is overreaching or is violative of basic principles of fair dealing or the services performed were not reasonable or necessary." Id. at 281. Accordingly, the court should ordinarily defer to the agreement and the fee charged thereunder "if it appears . . . that they meet a prima facie test of fairness and reasonableness, the client utterly fails to come forward with anything of substance to rebut that prima facie showing, and no expert is produced to challenge the bill rendered as unreasonable." Ibid. (citing Cohen v. Radio-Electronics Officers Union, 146 N.J. 140, 156 (1996)).

Our review of the record reveals Trenk submitted its billing statements, which detailed the amount billed and described the work it performed for defendants. Defendants did not challenge any specific entry made in any of the statements. The rates per hour for partners, associates, and support staff were all included in the retainer agreement. In response, and as the court correctly noted, defendants failed to produce any evidence, consistent with Rule 4:46-2, which created a genuine and material factual issue supporting their claim that Trenk's fees were unreasonably high or that the amount charged deviated from common standards. As such, the judge properly granted summary judgment.

Defendant Industrial Urban argues that it should not be responsible for Trenk's legal fees because: 1) the retainer agreement did not state that each defendant would be jointly responsible for Trenk's work on behalf of the other co-defendants; 2) it was not a signatory or guarantor on the note that was the subject of the Valley National litigation; 3) Trenk failed to clearly delineate each party's financial responsibility in the retainer agreement; and 4) only a small fraction of the time entries reveal work done specifically on Industrial Urban's behalf. We disagree.

Industrial Urban's position is belied by the terms of the retainer agreement. As the trial court correctly concluded, the retainer agreement sufficiently "advised defendants of the scope of the representation and informed them they would be waiving any conflict associated with the joint representation." In this regard, the retainer, which Industrial Urban's President, Nicole Frisina, signed, specifically states that Trenk was retained to represent "Industrial Concrete Construction of NJ, Inc., 35 Seville Drive, [LLC], Lori A. Frisina, Industrial Urban Corp. and Arrow Power Boats . . . ." Further, Industrial Urban's President, along with the other defendants, saw copies of the bills and paid them for months without dispute.

19

Finally, Industrial Urban, despite not being a signatory to the note or guaranty, faced significant liability in the Valley National litigation based on the fraudulent transfer claims, which were tied directly to Valley's claim against Industrial Concrete for breach of a secured transaction. Valley sought to foreclose upon all of Industrial Concrete's personal property, including its equipment. Valley alleged that from the date Industrial Concrete executed the note and obtained the line of credit, Industrial Concrete began fraudulently transferring its cash and other assets, including its equipment, to Industrial Urban and other defendants. Thus, Industrial Urban received the benefit of Trenk's work on the behalf of co-defendants, a fact that is not changed simply because in certain circumstances Trenk itemized its bills to reflect those instances where it provided specific legal services to Industrial Urban.

V.

Next, defendants contend that an interest rate of 18% is unreasonable and void as against public policy. They request that in the event we uphold the fee award, any interest rate should not exceed the standard allowable pre-judgment rate. Although we acknowledge that the language of the retainer agreement is unambiguous, it is not clear in the record before us whether

20

Trenk should be permitted to charge defendants an interest rate for unpaid invoices of 1.5% per month, or 18% per year.

"Agreements between attorneys and clients concerning the client-lawyer relationship generally are enforceable, provided the agreements satisfy both the general requirements for contracts and the special requirements of professional ethics." Cohen, 146 N.J. at 155-56 (citing Restatement of the Law Governing Lawyers, § 29A, cmt. c (Proposed Final Draft No. 1 1996)); see Gruhin, 338 N.J. Super. at 281 (explaining that a retainer agreement "ordinarily controls unless it is overreaching or is violative of basic principles of fair dealing or the services performed were not reasonable or necessary"). Moreover, in order to fulfill his or her fiduciary obligations to a client, an attorney "must explain at the outset the basis and rate of the fee." Cohen, 146 N.J. at 156. The attorney also must advise the client of "the scope of representation, and the implications of the agreement." Ibid.

Although the RPC do not address the amount of interest that can be charged on outstanding legal invoices, as to legal services, RPC 1.5(a) requires that "a lawyer's fee . . . be reasonable." We see no principled reason why a similar requirement should not be extended to interest charged on those fees. See Ween v. Dow, 822 N.Y.S.2d 257, 262 (App. Div. 2006) ("Though interest

is not part of the fee, but rather compensation for delay in payment of the fee, the rate of interest should be subject to the same reasonableness requirement. Furthermore, any interest charged must also comply with all applicable laws, including usury laws." (quotation omitted)); see also Matter of Giorgi, 635 N.Y.S.2d 899 (App. Div. 1995); see also Kutner v. Antonacci, 837 N.Y.S.2d 859, 863 (Dist. Ct. 2007) (finding an interest rate of 16% per year on unpaid legal fees was not fair and reasonable "in light of the fact that [in New York,] pre-judgment and post-judgment interest accrues at nine percent per year, interest on bank accounts are half of that, and interest on home equity loans and personal loans from financial institutions are generally below 16% per year" (citation omitted)); but see Bryan L. Salamone, P.C. v. Russo, 15 N.Y.S.3d 344, 345-46 (App. Div. 2015) (concluding an 18% annual interest rate in a retainer agreement is reasonable where the charges are based on a contingency over which the debtor has control, such as defaulting on a payment obligation that was contracted for, and where the agreement is not a contract of adhesion).

Because the court did not issue factual findings or legal conclusions in accordance with Rule 1:7-4 related to defendants' challenge to the reasonableness of the interest rate, we reverse that portion of the January 4,

2017 order imposing $41,495.44 in interest and remand for a plenary hearing. On remand, the court should consider the relevant factors under RPC 1.5(a) as well as any other factor that may bear upon the reasonableness of an 18% annual interest rate. If the court determines that an 18% interest rate is excessive, it should impose a reasonable rate under the doctrine of quantum meruit. Cohen, 146 N.J. at 164.

## VI.

Next, defendants argue that the trial court erred in granting attorney's fees to Trenk for its pro se collection effort. We agree.

In Segal v. Lynch, 211 N.J. 230 (2012), the Court disapproved of awarding attorney's fees to counsel who represent themselves in litigation. Id. at 260-64. In that case, a court-appointed parenting coordinator, who was also an attorney, argued that her "status as an attorney entitled her to a counsel fee" for her pro se litigation work to collect unpaid parenting coordinator fees and other "work that she prosecuted through self-representation . . . ." Id. at 234, 260, 264. After addressing the competing policy arguments, the Court concluded the "better rule" was that fee awards to self-represented attorneys should be disallowed. Id. at 263-64. The Court reasoned that a "self-represented attorney" should not gain an advantage and "be compensated for

A-2452-16T4

her time expended in securing relief when others who represent themselves would be precluded from being compensated for their time." Id. at 264. We perceive no exceptional circumstances in this record that would justify a departure from the holding in Segal.

It is undisputed that Trenk represented itself in prosecuting this collection action. Accordingly, we reverse the January 4, 2017 order to the extent it awarded Trenk $61,070.80 in attorney's fees incurred in its collection action against defendants.

VII.

Relying on Manning Engineering, Inc. v. Hudson County Park Commission, 74 N.J. 113 (1977), defendants argue the provision in the retainer agreement that waives their right to contest Trenk's fees if they do not object to an invoice within thirty days is unenforceable as contrary to public policy and "negates" the New Jersey discovery rule. Because Manning has no application to the facts before us, we find defendants' argument to be without sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only the following brief comments.

In Manning, the Court barred an engineering firm from recovering under a contract awarded to it by a municipality as a quid pro quo for "various illegal

24

acts" and a "kickback scheme" the firm's president engaged in with a former mayor prior to being awarded the contract. Id. at 117-18, 125-26, 142. The Court refused to allow the firm to recover under the contract "to prevent a fraud upon the public." Id. at 142.

Here, defendants did not submit any evidence to the trial court demonstrating that the thirty-day objection period was fraudulent or that it is even an atypical or uncommon practice. To the contrary, on its face, such a policy is reasonable because it promotes the timely resolution of disputes related to an attorney's services.

As to defendants' discovery rule argument, Manning addressed Rules 4:49, 4:50-1, and 4:50-2, which pertain to a court's authority to reopen a case after entry of a judgment. See Manning, 74 N.J. at 120-21, 121 n.4. Those Rules have no relevance here.

If defendants intended to refer to the discovery rule enunciated in Lopez v. Swyer, 62 N.J. 267, 272 (1973), which provides that "in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim," nothing in the retainer agreement explicitly or implicitly negates the Lopez holding. Defendants

25

received timely copies of the invoices. Those invoices would alert any reasonable defendant of a potential claim against Trenk.

## VIII.

Finally, in light of our decision in section VI, we decline to address as moot defendants' claim that Trenk is not entitled to legal fees for its collection efforts because the retainer agreement is contrary to the doctrine of good faith and fair dealing. Further, we need not address defendants' argument that the retainer agreement is unenforceable based on Trenk's alleged violation of RPC 1.7(b) because that issue was not raised in the trial court. See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (explaining we will not consider a claim that was not presented in the trial court "unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest") (quoting Reynolds Offset Co., Inc. v. Summer, 58 N.J. Super. 542, 548 (App. Div. 1959)).

To the extent we have not specifically addressed any of defendants' remaining arguments, we deem them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2452-16T4